**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AMAZIN' RAISINS INTERNATIONAL, INC.,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>OCEAN SPRAY CRANBERRIES, INC.,<br><br>　　　　　　Defendant. | Civil Action No. 1:04-cv-12679-MLW |

**OCEAN SPRAY'S CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to LR 56.1, Defendant Ocean Spray Cranberries, Inc. submits the following concise statement of material facts in support of its motion for summary judgment to which Ocean Spray contends there is no genuine issue to be tried:

**I.　　THE MAZIN PATENT**

1.　　United States Patent No. 5,188,861 ("the Mazin patent") includes 7 claims, of which only claim 1 is being asserted by Plaintiff Amazin' Raisins International, Inc. ("ARI").

2.　　Claim 1 of the Mazin patent reads as follows:

1. A process for preparing a flavored dried fruit product said process comprising:

(a) treating a dried fruit with an acidulant being selected from the group consisting of tartaric acid, malic acid, citric acid, ascorbic acid, phosphoric acid and fumaric acid, in an amount and for a period of time which is sufficient to substantially remove the natural flavor of the dried fruit;

(b) dehydrating the treated dried fruit to obtain a desired moisture content; and

(c) treating the dried fruit during step (a) or after step (b) with a flavoring agent having a flavor which does not substantially correspond to the natural flavor of the dried fruit, said flavoring agent being employed in an amount and for a period of time which is sufficient to impart to the dried fruit a flavor which is substantially the same as the flavoring agent;

>and so forming a flavored dried fruit product having a flavor which is substantially the same as the flavor of the flavoring agent and having an outer surface which is substantially non-sticky whereby the flavored dried fruit product may be easily handled.

(Woodford Decl. Ex. 1 at 10:1-24.)

3. The Mazin patent states that "[a]ny dried fruit which contains between about 10% to 18% moisture may be employed." (*Id.* at 3:60-62.)

4. The Mazin patent states that "[u]sing conventional methods such as Barlow, the dried fruit products may form lumps which cause difficulties in handling, packaging, obtaining exact product weights, and incorporating into other food stuffs." (*Id.* at 3:19-23.)

5. The Mazin patent states that "[s]odium citrate may also be added to the flavor solution to provide a more tart taste, for example when preparing a lemon/lime flavored dried fruit product." (*Id.* at 5:37-41.)

6. Webster's Third New International Dictionary defines "dry" as "free or relatively free from water or liquid; characterized by loss of water or of life-giving moisture; not being in or under water." (Woodford Decl. Ex. 8.)

## II.   THE PROSECUTION HISTORY OF THE MAZIN PATENT

7. The applicants filed the Mazin patent application on May 31, 1990 with a total of six claims, including the claim being asserted by ARI. (Woodford Decl. Ex. 1.)

8. The examiner rejected claim 1 under 35 U.S.C. § 103 as being unpatentable over Barlow (U.S. Pat. No. 1,717,489) in view of the CRC Handbook of Food Additives by Furia (vol. 1, 1972, CRC Press Inc.: Cleveland, pp. 225-253) and Agarwala (U.S. Pat. No. 4,543,033). (Woodford Decl. Ex. 3 at 2-3.)

9. The examiner stated:

> Barlow is deficient in not disclosing the use of accessory ingredients, e.g. acids. However, the claimed ingredients are known ingredients contributing their expected functional effect to the total composition.
>
> The Furia text discloses that the claimed acids are known food additives of known properties. The text reference discloses that the claimed acids are common food additives.

(*Id.* at 3.)

> To use the additives of the secondary references in the relation of Barlow for their expected functionally taught by the secondary references is considered a routine matter well within the ordinary skill of one in the art. The claims are considered to recite nothing more than an obvious recipe.

(*Id.* at 4.)

      10.    When responding to the examiner's rejection, the applicants distinguished the claimed process from the process in Barlow by stating:

> It is further submitted that in the method taught by Barlow, most of the juice being applied to the dried fruit would dry on the outer surface of the fruit. … In the present invention, the meat of the dried fruit is flavored by allowing the flavor solution to infuse through the outer surface of the dried fruit, and to permeate and stabilize in the dried fruit. The result is a food product in which the flavoring agent is contained substantially within the meat of the fruit and it is non-sticky to the touch.

(Woodford Decl. Ex. 4 at 5.)  The applicants further distinguished Barlow by stating:

> Applicants submit that there are significant differences between the product of Barlow and the product of the present application. … As discussed supra, the food product of the present invention has flavoring which permeates through the outer surface and the meat, without leaving the surface sticky to the touch. … In contrast, the food product produced by the method of Barlow consists of a flavored coating surrounding the meat of a dried fruit product, with the dried fruit product retaining its natural flavor characteristics. In addition, the Barlow product is sticky to the touch.

(*Id.* at 10.)

      11.    The applicants distinguished the claimed process from the process disclosed in Agarwala by stating:

3

> Applicants submit that Agarwala teaches the use of these agents in a process involving a cooking syrup which is applied to fresh fruit pieces. Thus, there is no teaching or suggestion in Agarwala relating to the preparation of a dried fruit product as claimed in the present invention.

(*Id.* at 7.)

12. To distinguish the disclosure of acid additives for flavoring in the prior art, the applicants stated:

> [W]hile the use of acids is known in the food additive industry, it is not obvious to use acids in the specific step to prepare the meat of the dried fruit for rehydration. Applicants submit that Barlow in view of Furia does not teach or suggest the use of the acidulation step as recited in the present claims or in order to substantially remove the flavor of the dried fruit.

(*Id.* at 6.)

### III.   OCEAN SPRAY'S PROCESS

13. Ocean Spray makes sweetened dried cranberries at manufacturing facilities in Tomah, Wisconsin and Middleboro, Massachusetts. The manufacturing processes at these two facilities are essentially the same. The differences are not relevant to the instant motion. (Mantius Decl. ¶¶ 4-11.)

14. Ocean Spray uses a countercurrent extraction process to remove flavor from cranberries that have been frozen, sliced, and then defrosted. (Scott Decl. ¶¶ 4-5.)

15. Ocean Spray uses water and/or permeate from cranberry juice during the countercurrent extraction process to remove flavor from the cranberries. (*Id.* ¶ 5.)

16. Ocean Spray does not add an acidulant to the water or permeate used in the countercurrent extraction process. (*Id.*)

17. The cranberries pieces that are treated to remove flavor during the countercurrent extraction process have a moisture content of approximately 90%. (*Id.* ¶ 6.)

4

18.     The cranberry pieces that emerge from the countercurrent extraction process have a moisture content of approximately 90%. (*Id.*)

19.     The photographs below show samples of cranberry pieces just before they enter the CCE (left) and just after they come out of the CCE (right).

 

(*Id.* ¶ 8.)

20.     After the desired amount of flavor is removed from the cranberry pieces during the countercurrent extraction process, the cranberry pieces are then subject to a countercurrent infusion process. (*Id.* ¶ 9.)

21.     During the countercurrent infusion process, citric acid is added to the cranberry pieces to replace a portion of the acid content removed during the extraction process. (*Id.* ¶ 10; Mantius Decl. ¶ 7.)

22.     The dried cranberry pieces formed by Ocean Spray's process have a sticky outer surface. (Scott Decl. ¶¶ 11-14; Mantius Decl. ¶¶ 9-10.)

23.     The dried cranberry pieces formed by Ocean Spray's process bind together to form clumps. (Scott Decl. ¶¶ 11-14; Mantius Decl. ¶¶ 9-10.)

24. To prevent the clumping of the dried cranberry pieces at Ocean Spray's Tomah facility, Ocean Spray rinses the product that emerges from the countercurrent infusion step to remove syrup from the outer surface of the cranberry pieces. (*Id.* ¶ 11.)

25. Ocean Spray uses several mechanisms during the drying process to break up clumps in the product. Ocean Spray also sprays the pieces with oil after they emerge from the dryer and passes the pieces through an oiling drum to ensure that each piece receives a uniform coat of oil. (Scott Decl. ¶¶ 11-13; Mantius Decl. ¶¶ 9-10.)

26. Any clumps that remain after oiling are segregated by a vibrating shaker screen or a system of rollers, and are then broken up before they are placed back into the manufacturing process. (Scott Decl. ¶ 14; Mantius Decl. ¶ 10.)

27. A topical flavoring is added to the product. The topical flavoring is a flavor crystal that sticks to the outer surface of the cranberry pieces. (Scott Decl. ¶ 15; Mantius Decl. ¶ 11.)

Dated: December 21, 2005

**FISH & RICHARDSON P.C., P.A.**

/s/William R. Woodford
William R. Woodford (*pro hac vice*)
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
(612) 335-5070 Telephone
(612) 288-9696 Facsimile

**FISH & RICHARDSON P.C.**
Michael E. Zeliger (BBO # 633654)
225 Franklin Street
Boston, MA 02110-2804
(617) 542-5070 Telephone
(617) 542-8906 Facsimile

*Attorneys for Defendant*
*Ocean Spray Cranberries, Inc.*

60329639.DOC