UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMAZIN' RAISINS INTERNATIONAL, INC.,

    Plaintiff,

  v.

OCEAN SPRAY CRANBERRIES, INC.,

    Defendant.

Civ. Action No. 1:04-cv-12679-MLW

**OCEAN SPRAY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT**

**INTRODUCTION**

In an attempt to cover what the '861 patent plainly does not—the innovative manufacturing process developed and patented by Ocean Spray more than a decade ago—ARI dispenses with well-established rules of claim construction and blatantly mischaracterizes deposition testimony to create the appearance of factual disputes where none exist.  Applying this flawed approach, ARI asks the Court to adopt its specious arguments that (1) soaking sliced cranberry pieces in water for an hour actually dries them, (2) applying a syrup containing sugar, citric acid, and a colorant to cranberry pieces that already have no perceptible flavor somehow "removes" flavor, and (3) after following the three processing steps that "so form" the claimed fruit product, the resulting product can be very sticky, and still infringe.  Each of these arguments is wrong as a matter of law.  Summary judgment of noninfringement on any one of these grounds is appropriate.

**ARGUMENT**

**A.    The Fresh, Sliced Cranberry Pieces That Ocean Spray Soaks In Water to Remove Flavor Are Not "Dried Fruit."**

The sliced cranberry pieces at issue here are not "dried fruit" by any stretch of the imagination.  As one would expect, when these pieces emerge from the water bath they are dripping wet and have a moisture content of nearly 90%.  (Scott Decl. ¶¶ 6-8, Exs. D, E.)  This fact cannot seriously be disputed.  Faced with this, ARI devises a litigation-inspired construction of "dried fruit" supported only by the unreliable and conclusory declarations of a paid expert and an inventor that are completely at odds with the intrinsic evidence (i.e., the claims, specification, and prosecution history).  This approach conflicts with the well-established rules of claim construction and should be rejected.

### 1. Consistent with the Intrinsic Evidence, "Dried Fruit" is a "fruit with a moisture content between about 10% to 18%."

The primary sources of evidence for claim construction consists of the claims themselves, the patent specification, and the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-1317 (Fed. Cir. 2005). The Federal Circuit has repeatedly stated that the patent specification is the "best source" to determine the meaning of a disputed term. *Id.* at 1315-17. "It is therefore entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims." *Id.* at 1317.

Here, the specification defines "dried fruit" to be a fruit that contains between 10% and 18% moisture. The first two sentences of the written description explains that "[t]he dried fruits which may be flavored employing the processes of the invention include peach, apple, pear, raisins, prunes, apricots and cherries. Any dried fruit which *contains between about 10% to 18% moisture* may be employed." (Woodford Decl. Ex. 1 at 3:58-62 (emphasis added).) The specification then explains that the claimed process involves a "one step rehydration," which can only occur if the dried fruit is actually *dehydrated*. (*Id.* at 4:14-17.) The examples and use of dried fruit in the remainder of the specification are consistent with the 10% to 18% moisture range.[1] (*E.g.*, *id.* at 3:64-4:4, 4:14-17, 6:65-9:67.) Nowhere does the patent state or even hint that "dried fruit" would include a fruit with a moisture content above 18%, and certainly nothing approaching the nearly 90% moisture content of Ocean Spray's decharacterized pieces.

ARI cannot point to anything in the specification that conflicts with the 10%-18% moisture range provided by the inventors. Instead, ARI advances several variations of the

---

[1] This moisture range is also consistent with USDA regulations for raisins, which require a moisture content of 18% or less to prevent spoilage and chemical reactions. (Woodford Decl. Ex. 7.) ARI is quick to point out that the moisture range for the Monukka raisin (which is not among the varieties of raisins listed in the patent) has a range greater than 18%. The USDA regulations for the Monukka variety require a moisture level of 19% or less. (*Id.*)

3

general argument that Ocean Spray is "improperly importing limitations into the claims." (ARI Br. at 9-12.) These arguments are off base. Ocean Spray is not importing a limitation, but rather defining "dried fruit" consistent with the meaning provided in the specification (and the rest of the intrinsic record). The use of the specification for this purpose is entirely appropriate. *See Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, --- F.3d ---, 2006 WL 335609, *4-*5 (Fed. Cir., Feb. 15, 2006) (stating that using the specification to discern the meaning of a term does not amount to importing a limitation from the specification); *Nystrom v. Trex Co.*, 424 F.3d 1136, 1144-45 (Fed. Cir. 2005) (stating that unless the patent provides notice that a term is intended to have a broader meaning, it should have a meaning consistent with its usage in the specification); *Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1301-02 (Fed. Cir. 2004) (holding that when a term is used consistently throughout the specification, it is defined by implication).[2]

The Court should look to the prosecution history after reviewing the claims and the patent specification. *Phillips*, 415 F.3d at 1317. "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Id.* Here, the prosecution history confirms the meaning of dried fruit from the specification. The applicants confirmed that the process is "a one step rehydration and a one step dehydration, which process is advantageous over [the prior art]." (Woodford Decl. Ex. 4 at 4.) Once again, a rehydration cannot occur unless the process begins with a fruit that has been dehydrated. Moreover, the applicants also distinguished prior art that disclosed a process for treating fresh fruit (which

---

[2] ARI also cites an alleged "vigilance" by the Federal Circuit to prohibit the construction of terms with numerical ranges. (ARI Br. at 10.) However, none of the four cases relied on by ARI stand for this proposition. *Modine* involves importing a numerical range from a dependent claim into a broader independent claim and is not relevant here. *RF Del., Inc.* and *Specialty Composites* are also irrelevant because those cases did not even involve numerical ranges. The last case, *Edwards Sys. Tech. v. Digital Control Sys.*, is not citable precedent under Federal Circuit Rule 47.6—a fact ARI does not even bother to mention.

4

included previously frozen fruit like the cranberries at issue here) as opposed to dried fruit. (*Id.* at 7.) ARI does not address the prosecution history at all in its brief, except to say it does not recite a specific moisture range.

### 2.     ARI's Construction of "dried fruit" Is Based Solely On Conclusory, Unsupported Declarations and Should Be Rejected.

ARI cannot maintain an infringement claim when "dried fruit" is properly construed to mean a fruit that has actually been dried. Consequently, because Ocean Spray replaces the natural juices and acids from its cranberry pieces with water, ARI argues that "dried" refers only to "natural" moisture content. Of course, the patent does not distinguish between natural moisture, unnatural moisture, or any other type of moisture for that matter. So, ARI simply dispenses with the intrinsic evidence and proffers declarations from its expert and an inventor that each provide identical constructions for the disputed term. However, the only support for this construction in either declaration is an article explaining that "[t]he terms dried and dehydrated are not synonymous."[3] (Cadwallader Decl. Ex. B at 4.) The difference between "dehydrated" and "dried" has no bearing on the meaning of "dried fruit" here.

To support its flawed approach, ARI cites the *Phillips* decision and asks the Court to believe the case law "encourages" the use of expert and inventor testimony. (ARI Br. at 15.) However, *Phillips* says just the opposite: "Conclusory unsupported assertions by experts as to the definition of a claim term are not useful to a court." *Phillips*, 415 F.3d at 1318; *see also Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1361 (Fed. Cir. 2005) (post-*Phillips* case rejecting conclusory expert testimony regarding claim construction). Moreover, *Phillips* states that courts should disregard any expert testimony that is at odds with the intrinsic evidence. *Id.*;

---

[3]   Apparently, dehydrated refers to food with no more than 2.5% moisture, while dried food has more than 2.5% moisture. (Cadwallader Decl. Ex. B at 4-5.)

*see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1585 (Fed. Cir. 1996). The Federal Circuit cautioned that "extrinsic evidence consisting of expert reports and testimony is generated at the time and for the purpose of litigation and can suffer from bias that is not present in intrinsic evidence." *Id.* Likewise, the Federal Circuit has often explained that the inventor's testimony with regard to claim construction is "entitled to little or no consideration." *E.g.*, *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997). Like expert testimony, litigation-driven inventor testimony is often self-serving and nowhere near as reliable as the intrinsic evidence. *See Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1379-80 (Fed. Cir. 2000). The declaration testimony here is not only conclusory and unsupported, but it is completely at odds with the intrinsic evidence. It should be given no weight.

ARI also relies on mischaracterized testimony from Mr. Mantius's deposition to argue that he agrees that decharacterized fruit is "dried fruit." (ARI Br. at 4.) However, the question and answer cited by ARI (which happened to be the first of the deposition) was intentionally misleading and the indirect reference to "dried fruit" lacked foundation. ARI conveniently leaves out counsel's objection in its purported quote of the testimony. *Id.* This question and answer is inadmissible and cannot properly be relied on by ARI here. *See Feliciano v. Rhode Island*, 160 F.3d 780, 787 (1st Cir. 1998) ("Fed. R. Civ. P. 56(e) requires the parties to submit admissible evidence in supporting and opposing motions for summary judgment").

ARI also leaves out the pages of testimony where Mr. Mantius explained that a decharacterized fruit could not be a dried fruit. According to Mr. Mantius, "[i]t's inconceivable that the decharacterized fruit pieces fall within the definition of dried fruit because that goes against the laws of physics." (Supp. Woodford Decl. Ex. 9 at 153:11-19.) When ARI's counsel asked him to assume that decharacterized fruit could be dried fruit, Mr. Mantius responded:

"[i]t's hard for me to respond to a question like that because it's really quite amazing that a question like that would be asked. It's just so far outside the realm of the physical world to be considering decharacterized fruit dry … I mean, a decharacterized fruit is by definition, I mean, it is a wet fruit. It is a hydrated fruit." (*Id.* at 163:16-164:15.) Mr. Mantius also rejected the notion that the cranberry pieces lose any moisture in the extraction process: "[t]he moisture content of all the fruit … is roughly the same as it was when it came in [to the countercurrent extractor] …. So the slice itself is structurally intact and very, very moist." (*Id.* at 101:1-14.) Mr. Mantius does not believe that Ocean Spray's decharacterized fruit is "dried fruit" and that was made clear to ARI at his deposition. ARI's contentions otherwise are disingenuous.

ARI also attempts to support its view that dried fruit can be soaking wet by arguing that Mr. Mantius and Ocean Spray's opinion counsel disagree with Ocean Spray's construction. (ARI Br. at 14-15.) Even if this extrinsic "evidence" where relevant to claim construction, it does not support ARI. Mr. Mantius provided his personal opinion that, in the abstract, dried fruit does not necessarily require a moisture range. He was not providing legal testimony on the meaning of "dried fruit" in the '861 patent. In fact, he made it clear that Ocean Spray's cranberry pieces *do not* meet the dried fruit limitation in the claim. (Supp. Woodford Decl. Ex. 9 at 138:12-25, 139:19-24.) As for Ocean Spray's opinion letter, when the passage relied on by ARI is actually cited in full, it is clear that counsel construed "dried fruit" to mean "a fruit that has been made dry." This is consistent with Ocean Spray's construction and, because Ocean Spray's fruit has obviously not been made dry, supports the opinion of noninfringement.

In the end, ARI's construction of "dried fruit" must also fail because it renders the term meaningless. *See Curtiss-Wright*, 2006 WL 335609, at *5 (rejecting plaintiff's interpretation of "adjustable" because the Court found it "difficult, if not impossible, to imagine any mechanical

7

device that is not "adjustable," under the ordinary meaning of that term … .") All fruits lose a "portion of natural moisture" when picked or harvested, when sliced, when peeled, or when processed. Under ARI's construction, the act of slicing a cranberry in half or peeling an apple would create a dried fruit. Such a result is absurd and cannot support an infringement claim.

**B.      Ocean Spray Applies Citric Acid to the Cranberry Pieces to Mimic the Acidic Bite of a Cranberry, Not to Remove Flavor.**

The role of the acidulant in the claimed process is clear and unambiguous—it is applied to "substantially remove the natural flavor of the dried fruit." Ocean Spray does not use an acidulant to remove flavor,[4] but rather extracts flavor (i.e., juice sugars and acids) by drenching the pieces with water in a counter-current extraction process. (Scott Decl. ¶ 5.) Through counter-current extraction, the sugar content of the pieces are reduced by as much as 95% and the acid content from approximately 2.4% to 0.25%. (*Id.* ¶ 6.) Because Ocean Spray's products are supposed to taste like flavored cranberries, Ocean Spray treats the pieces with a specific amount of citric acid to raise the acid level of the pieces to roughly half of the original cranberry content. (*Id.* ¶ 10.) The citric acid allows Ocean Spray to mimic the acidic bite of cranberry at a much lower cost than cranberry concentrate. (Mantius Decl. ¶ 7.)

ARI does not dispute that the extraction process removes the natural flavor of the cranberry pieces, but yet claims the citric acid added after extraction removes the cranberry's natural flavor—apparently a second time—solely to create the appearance of a factual dispute. (ARI Br. at 20-21.) To support this theory, ARI points to the portion of Mr. Mantius's deposition where he explained that the natural flavor of the cranberry pieces remaining after extraction is imperceptible in the overall flavor system. (Sorenson Decl. Ex. 2 at 108:14-109:5.)

---

[4]   As explained in Ocean Spray's opening brief, the use of acidulants would actually *prevent* the removal of flavor from the highly acidic cranberry pieces through osmosis. (Ocean Spray Br. at 8-9.) ARI does not even attempt to dispute this fact.

However, as Mr. Mantius explains in that same passage, this has nothing to do with the use citric acid, but rather due to the fact that Ocean Spray starts the flavoring process with a "completely stripped piece of fruit" and thus have virtually no natural flavor to begin with. Moreover, Mr. Mantius made clear that whatever natural flavor existed before infusion was also present after infusion. (Supp. Woodford Decl. Ex. 9 at 175:19-176:3.)

ARI also contends that it would "make no sense" to add citric acid to mimic the tart flavor of cranberry in blueberry or cherry products. (ARI Br. at 20.) This argument is baseless and nonsensical. Ocean Spray's blueberry products do not contain citric acid and are not supposed to have a cranberry bite.[5] (Mantius Decl. ¶ 7.) The cherry-flavored products are intended to taste like cherry-flavored cranberries, not cherries. As Mr. Mantius explained, nobody would mistake a cherry-flavored sweetened dried cranberry for a dried cherry. (Supp. Woodford Decl. Ex. 9 at 175:19-176:3.)

There is no genuine factual dispute here. Ocean Spray removes flavor using water in its patented extraction process. Citric acid is used for flavoring, as is common in the food industry.

C.  **ARI's Reliance on Ocean Spray's Final Product to Satisfy the "Non-Sticky" Limitation Conflicts With the Claim Language and Fails As a Matter of Law.**

Although the parties disagree on the construction of the phrase "substantially non-sticky whereby the flavored dried fruit product may be easily handled," this limitation need not be construed to resolve the dispute here.[6] There is no question that without the steps of oiling and declumping, Ocean Spray's flavored fruit products are extremely sticky and could not satisfy the

---

[5] ARI has yet to explain how it can maintain its infringement claim against Ocean Spray's blueberry products when it knows they are made without an acidulant. (*See* ARI Br. at 5 ("All of Ocean Spray's infusion syrups contain an acidulant, citric acid, except for blueberry syrup.").)

[6] Construction of this term would eventually be required. "Easily handled" is a subjective term and renders the claim indefinite under 35 U.S.C. §112, ¶ 2. *See Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342 (Fed. Cir. 2005) (invalidating a claim because the term "aesthetically pleasing" was indefinite).

"non-sticky" limitation under any construction. Indeed, Mr. Mantius explained that "[n]on-oiled product would just be a nightmare, it would just be a nightmare." (*Id.* at 57:16-17.)

The real dispute here is over the "so forming" limitation of claim 1. After reciting steps (a), (b), and (c), of the process, the claim states: "*and so forming* a flavored dried fruit product … having an outer surface which is substantially non-sticky whereby the flavored dried fruit product may be easily handled." The "so forming" limitation requires that steps (a), (b), and (c), and only those steps, produce a "non-sticky" product. This construction is confirmed by the prosecution history. To obtain allowance, the inventors argued repeatedly that steps (a) through (c) produce a non-sticky product to overcome the prior art. (Woodford Decl. Ex. 4 at 5-6, 10.)

Here, the general steps of removing flavor, treating with a flavoring agent, and dehydrating in Ocean Spray's process provides an extremely sticky product. To avoid summary judgment, ARI focuses on Ocean Spray's final products—which have been treated with oil twice and passed through a de-clumping machine—and not the fruit product "so formed" by the general steps of the claim. (ARI Br. at 24-25.) This approach improperly reads the "so forming" limitation out of the claim and fails as a matter of law.

## **CONCLUSION**

For the foregoing reasons, Ocean Spray respectfully requests that the Court grant its motion for summary judgment of noninfringement.

Dated:  February 24, 2006                           s/William R. Woodford
                                                    William R. Woodford (*pro hac vice*)
                                                    FISH & RICHARDSON P.C., P.A.
                                                    3300 Dain Rauscher Plaza
                                                    60 South Sixth Street
                                                    Minneapolis, MN 55402
                                                    (612) 335-5070 Telephone
                                                    (612) 288-9696 Facsimile

>Michael E. Zeliger (BBO # 633654)
>FISH & RICHARDSON P.C.
>225 Franklin Street
>Boston, MA 02110
>(617) 542-5070 Telephone
>(617) 542-8906 Facsimile
>
>*Attorneys for Defendant*
>*Ocean Spray Cranberries, Inc.*

21270770.doc