**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AMAZIN' RAISINS INTERNATIONAL, INC.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>OCEAN SPRAY CRANBERRIES, INC.,<br><br>　　　　　Defendant. | Civil Action No. 1:04-cv-12679-MLW |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT**

This brief is submitted at the invitation of the Court and upon agreement of the parties as a supplement to Amazin Raisin's opposition to Ocean Spray's motion for summary judgment of non-infringement. During the March 2, 2006 hearing, ARI clarified its position with respect to how Ocean Spray's process meets the "substantially non-sticky" limitation of Claim 1 of the Mazin patent. A discussion also ensued with respect to the use of extrinsic evidence in claim construction in light of the Federal Circuit's En Banc decision *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). Counsel for both parties conferred and have agreed to submit simultaneous briefing limited in scope to the effect of Phillips on the use of extrinsic evidence in discerning the meaning of claim terms to one of ordinary skill in the art, and to further briefing on the legal standards underlying whether the "substantially non-sticky" limitation is met by Ocean Spray's process.[1]

---

[1] Ocean Spray has also indicated that it intends to further brief the application of the doctrine of equivalents to the issues before the Court, and to supplement its brief with excerpts from the recent deposition testimony of Keith Cadwallader, the author of one declaration submitted by Amazin Raisin in support of its

  A. <u>Ocean Spray Cannot Avoid Infringement Simply Because It Employs Additional Steps To Achieve A "Substantially Non-Sticky" Final Product.</u>

Claim 1 of the Mazin patent requires that the *final* dried fruit product have "an outer surface which is substantially non-sticky whereby the flavored dried fruit product may be easily handled." ('861 pat. at 10:19-24.) The claim is clear that "substantially non-sticky" is describing the end product - or the natural result of the process - the "flavored dried fruit product." (Id.) Craisins are easy to handle and have a substantially non-sticky outer surface - just as the claim requires. The fact that Ocean Spray employs additional processing steps to render its flavored Craisin product substantially non-sticky provides Ocean Spray with no infringement defense. In fact, Ocean Spray's non-infringement argument is a claim construction argument in disguise. What matters is that Ocean Spray in fact performs the recited steps--further steps are also employed by Ocean Spray are not relevant to whether Ocean Spray infringes.

The use of additional steps in a multi-step process does not, in the context of claim 1, lend Ocean Spray a legal basis to avoid infringement. *See Kinik Co. v. International Trade Commission*, 362 F.3d 1359, 1366 (Fed. Cir. 2004)(noting that "precedent indeed holds that when all steps of a claimed process are practiced in the same way and for the same purpose as shown in the patent, the addition of further steps generally does not avoid infringement."). The preamble of claim 1 introduces a series of steps involved in preparing a "flavored dried fruit product," and those steps are listed following use of the transitional phrase "comprising." ('861 pat. at 10:2.) The transitional word "comprising" is well known in patent parlance as a signal that

---

opposition to Ocean's Spray's motion. Amazin Raisin respectfully reserves its right to, if necessary, reply to any new subject matter or testimony submitted by Ocean Spray in its supplemental briefing.

additional steps may be performed in carrying out a clamed method and still infringe. *Smith & Nephew, Inc. v. Hayhurst*, 276 F.3d 1304, 1311 (Fed. Cir. 2001).

Stated otherwise, a method claim employing the signal "comprising" as the transitional term indicates that the claimed steps do not prohibit additional steps beyond what is explicitly recited in the claim. *Smith & Nephew*, 276 F.3d at 1311("an accused method does not avoid literally infringing a method claim having the transitional phrase 'which comprises' (or 'comprising') simply because it employs *additional* steps." (citing *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2 1261, 1271 (Fed. Cir. 1986)). Indeed, as noted by the *Smith & Nephew* court, the "comprising" signal "appears in the vast majority of patent claims, for it implements the principle that clams are intended to provide a concise statement of the clamed invention as distinguished from what has gone before; a claim is not a handbook for practice of the invention." *Id*.

The Mazin patent lists several examples in the specification that address changing the flavor of raisins. ('861 pat. at 6:61 - 9:67)(listing 14 examples, all introduced as "non-limiting examples [that] are illustrative of the present invention.".) The specification also, however, explicitly notes that persons of skill in the art "could readily adapt the processes of the invention to other dried fruits." ('861 pat. at 4:5-14.) When processing a raisin, there is no need to add sweetening agents, as raisins are naturally sweet. Where no additional sweetening agents are employed, the final product of the preferred embodiment is said to have "superior flow properties which makes the product easy to handle, facilitating its use as a consumer product or in further processing as an ingredient in other food stuffs." ('861 pat. at 3:43-46.) In contrast, a cranberry requires the addition of a sweetening agent, which necessarily involves additional processing steps. The

specification teaches that when a sweetening agent is used, "it is advantageous to wash the treated raisins prior to drying," one of the additional process steps in fact employed by Ocean Spray. ('861 pat. at 5:53-55.) Although not a complete handbook on how to process cranberries, the specification certainly contemplates additional processing steps may be necessary depending upon the fruit that is being modified--but those additional processing steps are not required (nor are they prohibited) by the claim language.

Ocean Spray's process infringes because it performs all of the steps of the claimed invention. Ocean Spray meets the first step of the process when it infuses its decharacterized fruit pieces[2] with infusion syrup that contains citric acid. (Amazin Br. at pp. 17-19.) Mr. Mantius, the most knowledgeable scientist of Ocean Spray's process, testified that after the acidulant syrup is infused into the decharacterized fruit pieces, the natural flavor of the decharacterized fruit pieces is removed -- rendered "imperceptible by virtue of the fact that it's such a minor component in the overall flavor system because, after all, that's our goal, to strip the cranberries of juice and flavor. So we have a completely stripped piece of fruit to start the infusion process with." (Sorenson Decl. Ex. 2 at 108:25 - 109:5.) Ocean Spray meets the second step of the process when it dehydrates the infused fruit pieces to its desired moisture content, and meets the third step when it adds a flavoring agent to the fruit pieces. (Amazin Br. at pp. 19-20.)

Ocean Spray admits that its process results in a flavored dried fruit product with a flavor that is substantially the same as the flavored syrup it uses, and is substantially non-sticky and easily handled. (Sorenson Decl. Ex. 2 at 51:23 - 53:22.) In fact, Ocean Spray

---

[2] Ocean Spray refers to its decharacterized fruit pieces in its patent as "a product of the juice extraction process," and explicitly states that the decharacterized pieces "may be used as a carrier for various flavorings by infusing the decharacterized fruit with a flavored liquid infusion syrup." (U.S. Pat. No. 5,320,861, col. 1, ll. 35-39).

4

adds oil (twice) to the products of the accused process to ensure that the end product is easy to handle. (*Id.* at 51:23 - 53:22.) Ocean Spray also washes its infused fruits (a process step specifically taught by the specification as necessary where sweetening agents are used) during its process and additional processing step that does not alter the fact that Ocean Spray's final product is not sticky, and is easily handled.

Ocean Spray's reliance on the additional steps it implements in creating its non-infringement argument is identical to the failed argument set forth by the accused infringer in *Smith & Nephew*. 276 F.3d 1304. In *Smith & Nephew*, the patent claims at issue were drawn to a method to affix a suture within a bone by performing four listed steps in the claim. 276 F.3d at 1306. The claims at issue employed the signal term "comprising" in the transition to the claim steps. *Id.* The accused infringer asserted that its process implemented an additional step beyond what was listed in the claim language -- a step requiring the physician to pull on the anchor in order to affix the anchor to the bone. *Id.* at p. 1307. The district court agreed, and granted summary judgment of non-infringement in favor of the accused infringer. *Id.* at p. 1308.

The Federal Circuit reversed, noting that the listed steps of the claimed method do "not bar the surgeons' tug," or any movement of the anchor that may result. *Id.* at 1309-10. The *Smith & Nephew* court noted that the clamed steps "neither exclude nor require a surgeon's tug to assure that the anchor is set" within the bone. *Id.* The court also noted, importantly, that the extra step employed by the accused infringer was in accord with instructions given within the specification and other sources as "a matter of prudent surgical practice, not a limitation of [the asserted claim]." *Id.* at 1310. The *Smith & Nephew* court ruled that an additional step was not, standing alone, a sufficient basis to

5

conclude, as a matter of law, that the accused process did not infringe, given conflicting evidence in the record. *Id.*

Here, as in *Smith & Nephew*, the specification advises that additional processing steps may be necessary depending upon the type of fruit that is involved in the process. Specifically, the Mazin patent instructs that the use of sugar in the flavoring step may necessitate additional steps, such as washing the sweetened berries before they are dried. ('861 pat. at 5:53-55.) Here, like in *Smith & Nephew*, the claim language does not exclude or require that additional processing steps be employed before the creation of the final product. As in *Smith & Nephew*, the simple fact that Ocean Spray employs additional steps does not mean that it does not infringe. The relevant inquiry is whether the claimed steps are practiced, not whether Ocean Spray has seen fit to employ additional process steps. No matter how many additional steps are employed, Ocean Spray still practices each of the steps of the claimed invention, all of which result in a substantially non-sticky final product. Ocean Spray cannot avoid infringement by using sticky sweetening agents in its process that are not required, or prohibited, by the patented Amazin Raisin process. The transitional signal "comprising" explicitly indicates that additional steps may be performed, but still infringe the claimed process.

   B. <u>"So Forming" Is Not a Claim Limitation.</u>

In a final attempt to limit the scope of the Amazin Raisin invention, Ocean Spray seized upon the words "so forming" in the final paragraph of the limitation, hoping to convince the Court that such language justifies reading a requirement that "steps (a), (b), and (c), <u>and only those steps</u>, produce a "non-sticky" product" into the claim language. (Ocean Spray Reply at p. 10) (emphasis added.) Ocean Spray's position would result in

6

importing the process disclosed for the preferred embodiment[3] -- flavoring raisins -- to the claim language, a cardinal sin in patent claim construction. *Teleflex Inc. v. Ficosa North Am. Corp., et al.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002) (reversing district court's claim construction that committed "cardinal sin" of importing limitation into claims). While it may be true that raisins, once subjected to the process, do not require further processing to be "substantially non-sticky," it does not follow that processing of a cranberry in a similar manner is required by the claim language. The '861 patent is not limited to changing the flavor of a raisin - it is explicitly intended to have broader application, and additional steps employed to process a cranberry does not mean that such process cannot infringe.

Further, the "so forming" clause is not listed in the claim as one of the required steps. To the contrary, the final paragraph of claim 1 simply describes the natural result of the claimed process. The "so forming" clause is therefore not a claim limitation at all. *See Texas Instruments Inc. v. United States International Trade Commission*, 988 F.2d 1165, 1172 (Fed. Cir. 1993). The use of "so forming" in claim 1 is similar to a

---

[3] Ocean Spray is similarly attempting to read a numerical moisture limitation into claim 1 by asserting that the moisture range of a raisin limits the scope of the term "dried fruit" to the moisture content of a raisin. (Ocean Spray Br. at p. 14.) As with the processing variables contemplated in the specification concerning the texture of the final product, the specification also discloses example 9, where the raisins, before the acidulation step, are "washed with hot water and dried." ('861 pat., col. 8: 11-13.) In example 9, there is no attempt to define the moisture content of the washed raisins before the acidulation step, although such a step certainly would increase the moisture content of the raisin. (Id.) This example alone is evidence enough to support the conclusion that claim 1 is also not limited in scope to the moisture of a raisin, and that the invention applies to a much broader moisture range than advocated by Ocean Spray. *See, e.g., JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324 (Fed. Cir. 2005)(refusing to import limitations from examples disclosed in the specification into the claim language). Example 9 in the Mazin patent is in fact conclusive evidence that no disavowal of claim scope in the specification, let alone a clear and unambiguous one, is found in the specification of the Mazin patent. *See Sorenson v. ITC*, 427 F.3d 1375, 1378-79 (Fed. Cir. 2005) (ruling that disclaimer of subject matter occurs only when statements both clearly" and "unmistakably" indicate the patentee disavowed claim scope); *Modine Mfg. Co. v. U.S. Int'l Trade Comm'n.*, 75 F.3d 1545, 1551 (Fed. Cir. 1996); *see also Edwards Sys. Tech., Inc. v. Digital Control Sys., Inc.*, 2004 U.S. App. LEXIS 9679, *13-24 (reversing claim construction that imported numerical ranges into claim where no such range existed) (Sorenson Decl. Ex. 7).

7

"whereby" clause, which is used in patent drafting parlance to state "the result of the limitations in the claim," but adds "nothing to the patentability of the claim." *Texas Instruments*, 988 F.2d at 1172 (affirming trade commission determination that "whereby/to preclude" clauses in claims at issue do not act as limitations to the claim -- they only serve to describe the inherent result of the process).

Ocean Spray's focus on the terms "so forming" is another means by which it hopes the Court will violate the immutable rule of claim construction that prohibits importing limitations from a preferred embodiment into the claim language.  In truth, the terms "so forming" is not a claim limitation, they only serve to describe the natural result of the process.  The Court should reject Ocean Spray's faulty claim construction argument disguised as a non-infringement argument.

    C.    <u>The Court May Consider Expert Testimony To Confirm The Meaning Of Claim Language To One Of Ordinary Skill In The Art.</u>

Contrary to what Ocean Spray would have this Court believe, the Federal Circuit did not issue a moratorium directing the per se exclusion of all expert opinion from the claim construction calculus in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005). To the contrary, the *Phillips* court affirmed that expert testimony, so long as it is considered in the context of the intrinsic evidence, is useful to claim construction for "a variety of purposes, such as to . . . ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Phillips*, 415 F.3d at 1318.  Indeed, where on the face of the intrinsic evidence there is no definition of a claim term, the use of expert and inventor testimony is necessary.  *Id*. at 1318 (use of expert testimony is useful "to establish that a particular

term in the patent or the prior art has a particular meaning in the pertinent field"); s*ee also Tap Pharm. Prods., Inc. v. Owl Pharms. L.L.C.*, 419 F.3d 1346, 1353-1354 (Fed. Cir. 2005) (post-*Phillips* case affirming a claim construction that relied on the testimony of a party's expert as to the meaning "from the perspective of a person of ordinary skill in the art").

Amazin Raisins does not dispute that extrinsic evidence is generally deemed "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Id.* at 1317. This Honorable Court recognized as such in its opinion in *Biogen v. Berlex Laboratories*, 113 F.Supp.2d 77, 95-96 (D. Mass. 2000)(finding that where terms require clarification, resort to the intrinsic evidence is appropriate and necessary). However, although the intrinsic record is to be a primary source for determining the meaning of claim terms to one of ordinary skill in the art, *Phillips* affirms that extrinsic evidence (including expert and inventor testimony) is nonetheless a perfectly acceptable resource to the court in its claim construction analysis, especially where the intrinsic evidence does not provide a definitive basis for concluding what meaning one of ordinary skill in the art would ascribe to specific claim terms. The *Phillips* court was clear that a district court has the discretion to consider extrinsic evidence:

> In sum, extrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence. <u>Nonetheless, because extrinsic evidence can help educate the court regarding the field of the invention and can help the court determine what a person of ordinary skill in the art would understand claim terms to mean, it is permissible for the district court in its sound discretion to admit and use such evidence.</u> In exercising that discretion, and in weighing all the evidence bearing on claim construction, the court should keep in mind the flaws inherent in each type of evidence and assess that evidence accordingly.

9

414 F.3d at 1319 (emphasis added). Here, for example, Amazin maintains the term "dried fruit" is not defined in the intrinsic evidence, and is not limited to the specific numerical moisture range advocated by Ocean Spray. (Mazin Br. at pp. 9-14.) However, one of ordinary skill in the art (in fact two such persons) have presented testimony for the Court's consideration that, consistent with the intrinsic evidence, one of ordinary skill in the art of food processing would understand the term "dried fruit" to encompass a fruit with a portion of its natural moisture content removed, and not narrowly limited to the specific moisture parameters of a typical raisin. (Mazin Br. at pp. 15-16.) Amazin's construction in fact comports with the opinion of Ocean Spray's outside counsel, who similarly concluded that the term "dried fruit" to be a "fruit having a reduced liquid content relative to its natural state." (Sorenson Decl. Ex. 11. p. 4.)

Ocean Spray assumes, without any support, that the expert testimony submitted by Amazin Raisin is conclusory and unsupported, and therefore should not be considered by the Court. The sole basis of Ocean Spray's conclusion is argument of counsel, as Ocean spray has not set forth any evidence, fact or opinion, upon which a determination of the reliability or admissibility of Amazin's expert evidence. Lawyer argument alone cannot overcome factual evidence relied upon by the nonmoving party. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) (lawyer arguments are not evidence); *Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.,* 45 F.3d 1550, 1561-62 (Fed. Cir. 1995) (lawyer argument does not satisfy moving party's initial burden of showing that there is an absence of evidence to support nonmoving party's claim). Ocean Spray has not challenged the qualifications or factual foundation of either witness to set forth opinions on what one of

ordinary skill in the art would subscribe to the claim language at issue.[4] Here, the Court has the discretion to consider expert evidence from both expert witnesses proffered by Amazin, and should do so.

Ocean Spray has, after briefing on the current motion had been submitted, deposed Dr. Cadwallader, and may set forth additional portions of his deposition to support its view of the weight to assign to Dr. Cadwallader's analysis in its supplemental briefing. However, Ocean spray makes no attempt (nor could it) to disqualify the testimony of either witness under Rule 702 of the Federal Rules of Evidence. Regardless (at best) Ocean Spray's quarrel with the expert opinion of both witnesses goes to the weight of the evidence, not its admissibility. Accordingly, both opinions proffered by Amazin Raisin are appropriate for consideration by this Court.

## CONCLUSION

When claim 1 is properly construed, genuine issues of material fact preclude judgment as a matter of law with respect to ARI's claims that Ocean Spray infringes, literally or equivalently, claim 1 of the Mazin patent. For this reason, the Court should deny Ocean Spray's motion for summary judgment of noninfringement.

Dated: May 1, 2006         By: s/Christopher J. Sorenson_____
                           **ATTORNEYS FOR PLAINTIFF**
                           Nicholas G. Papastavros (BBO # 635742)
                           Gina M. McCreadie (BBO # 661107)
                           NIXON PEABODY LLP
                           100 Summer Street
                           Boston, MA 02110
                           Telephone: 617-345-1000

---

[4] Ocean Spray also does not contend that expert testimony is not admissible and appropriate to establish that its process meets the specific limitations for which both experts are proffered by Amazin Raisin. Indeed, the expert evidence set forth by Amazin is not rebutted by Ocean Spray, likely because it hopes to avoid admitting that genuine issues of material fact preclude summary judgment of non-infringement.

          Douglas J. Williams (MN # 117353)
          Christopher J. Sorenson (MN # 210118)
          Todd S. Werner (MN # 033019X)
          MERCHANT & GOULD P.C.
          3200 IDS Center
          80 South Eighth Street
          Minneapolis, MN 55402
          Telephone: 612-332-5300
          Facsimile: 612-332-9081