**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AMAZIN' RAISINS INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> OCEAN SPRAY CRANBERRIES, INC., <br><br> Defendant. | Civil Action No. 1:04-cv-12679-MLW |

**OCEAN SPRAY'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT**

## INTRODUCTION

During the March 2, 2006 hearing, the Court asked for supplemental briefing to address a number of issues relating to Ocean Spray's Motion for Summary Judgment of Noninfringement. Ocean Spray submits this supplemental brief in support of its motion.

## ARGUMENT

**A.**  *Phillips* **Instructs the Court To Give No Weight to Declarations that Contain Conclusory Assertions or Testimony At Odds With the Intrinsic Evidence.**

In *Phillips v. AWH Corp.*, the Federal Circuit emphasized the importance of the intrinsic record (i.e., the claims, the specification, and the prosecution history) in claim construction. 415 F.3d 1303, 1314-1317 (Fed. Cir. 2005). The approach taught in *Phillips* is the same one used by the Court to construe the claims in *Biogen, Inc. v. Berlex Labs, Inc.*, 113 F. Supp. 2d 77, 95-97 (D. Mass. 2000). Consistent with *Phillips* and *Biogen*, Ocean Spray relies exclusively on intrinsic evidence to support its proposed constructions for the disputed claim terms here.

In stark contrast to *Phillips*, ARI jettisons the intrinsic record and relies exclusively on declarations from its expert, Dr. Keith Cadwallader, and inventor, Amir Lalji, to support its constructions. To justify this approach, at the March 2 hearing ARI's counsel claimed that *Phillips* changed the viewpoint from which claims are to be construed. (March 2, 2006 Tr. at 12-14.) According to counsel, before *Phillips*, claims were construed "in the abstract" and outside of what one of ordinary skill would understand the terms to mean, and *Phillips* now requires that claims be construed from the view of one skilled in the art. (*Id.*) This is nonsense. Claims have always been construed from the viewpoint of one skilled in the art. *Mulitform Dessicants, Inc. v. Medzam Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998) ("It is the person of ordinary skill in the field of the invention through whose eyes the claims are construed."); *Biogen*, 113 F. Supp. 2d at 96 ("[T]he words used in the claims must be construed from the perspective of the person ordinarily

1

skilled in the field of invention."). *Phillips* provides no justification for ARI's exclusive reliance on extrinsic declarations.

In fact, *Phillips* strictly limited the use of extrinsic evidence, and expert testimony in particular, during claim construction. 415 F.3d at 1317. The Federal Circuit instructed courts not to consider conclusory, unsupported assertions by experts regarding the definition of claim terms or testimony at odds with the intrinsic evidence. *Id.* at 1318. *Phillips* and subsequent decisions provide numerous reasons why expert testimony (and extrinsic evidence in general) is less reliable than intrinsic evidence, including the risk that it will be used to change the meaning of the claims thereby undermining the public notice function of patents. *Id.* at 1318-19; *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1361 (Fed. Cir. 2005) (rejecting an expert declaration because it provided only "scant support" and conflicted with the intrinsic evidence). Consistent with this guidance, ARI's declarations should be given no weight.

**1.     The Definition of "dried fruit" in the Declarations at Issue Is Unsupported and Conflicts With the Intrinsic Evidence.**

ARI contends that Ocean Spray's decharacterized fruit pieces satisfy the "dried fruit" limitation in claim step (a). Thus, ARI hinges its infringement claim on the notion that sliced cranberries that have been soaked in water for roughly an hour to extract nearly all their flavor, and have a 90% moisture content, are somehow "dried fruit."[1] (*See* Scott Decl. Ex. E.) Even ARI's expert had to concede that fruit pieces with a 90% moisture content are not "dried fruit" under the ordinary, common-sense meaning of the term. (Second Supp. Woodford Decl. Ex. 10 at 135:6-17, 138:20-139:11.) He also conceded that the 90% moisture content is nowhere near

---

[1]   Although ARI seems to dispute the 90% moisture content of the decharacterized fruit in its briefs, ARI's expert testified that before juice extraction the sliced cranberries have a moisture content of 87%-92% and the moisture content of the decharacterized pieces after extraction would be the same or higher. (Second Supp. Woodford Decl. Ex. 10 at 113:21-117:7.)

the 10%-18% range defined in the Mazin patent. (*Id.* at 148:13-19.)

Since Ocean Spray's process lacks any actual "dried fruit," ARI generated two declarations and a new definition for the term that covers a soaking-wet fruit piece that has never been dried under any normal sense of the term. (Cadwallader Decl. ¶ 5; Lalji Decl. ¶ 6.) But even a quick glance through these declarations reveals that neither one provides any rationale for the proposed meaning of "dried fruit," or any nexus to the intrinsic record. Conclusory, unsupported definitions supplied through declarations are "not useful to a court" and are precisely the type of evidence that *Phillips* cautions against. 415 F.3d at 1318.

The failure to provide support or a legitimate basis for the new meaning of "dried fruit" comes as no surprise, since the definition is completely at odds with the intrinsic record. Both declarations define "dried fruit" as "fruit or fruit piece that has had a portion of its naturally occurring moisture content removed."[2] But, as ARI's expert had to admit, this broad definition of "dried fruit" would cover nearly every form of fruit, including a squeezed grape, an apple or peach that has merely been sliced, or even a fruit that has been simply picked from the vine (as it begins to lose moisture immediately after being picked). (Second Supp. Woodford Decl. Ex. 10 at 148:20-152:23.) ARI's expert said himself that his definition was "ridiculous in calling a sliced fruit a dried fruit." (*Id.* at 158:4-16.) The law also finds such a result ridiculous and rejects constructions that render a term meaningless. *E.g.*, *Curtis-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1381 (Fed. Cir. 2006).

Of course, neither the patent nor the prosecution history supports any of these examples of "dried fruit." Quite the opposite, to overcome the prior art during prosecution, the inventors

---

[2] Although Dr. Cadwallader and Mr. Lalji have never spoken before, they somehow provide the same word-for-word definition of "dried fruit." (Second Supp. Woodford Decl. Ex. 10 at 141:5-144:14.) Dr. Cadwallader testified that it would be "impossible" for both himself and Mr. Lalji to independently provide the exact same definition for "dried fruit." (*Id.*)

3

distinguished "dried fruit" from fresh fruit, previously frozen fruit, and canned fruit disclosed in the Agarwala reference. (Woodford Decl. Ex. 4 at 7.) Yet all of the various types of fruit in Agarwala would now fall directly within ARI's definition. A patentee cannot recover subject matter given up during prosecution through claim construction. *E.g.*, *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1477 (Fed. Cir. 1998) (limiting the meaning of "console" based on arguments made to distinguish the prior art during prosecution).

ARI's "dried fruit" definition also veers from the intrinsic record by making a distinction between "naturally occurring moisture" as opposed to moisture in general. The reason for ARI's inclusion of "naturally occurring" is obvious and transparent. While the decharacterized fruit pieces have a 90% moisture content, some of the moisture is not "natural" because the pieces were soaked in apparently "unnatural" water. At his deposition, ARI's expert even forgot why the words "naturally occurring" were in his definition: "I don't know if those words are necessary. If it had its moisture content, it's just the moisture of the product itself." (Second Supp. Woodford Decl. Ex. 10 at 164:1-8.) He then conceded that without "naturally occurring," ARI's new definition would not cover a decharacterized fruit piece. (*Id.* at 164:20-165:8.) He also conceded that the distinction between "naturally occurring" moisture and moisture in general finds no support in the patent or prosecution history. (*Id.* at 166:21-167:9.)

    **2.**    **ARI's Definition of "to substantially remove the natural flavor of the dried fruit" Is Also Unsupported and In Conflict With the Intrinsic Record.**

The asserted claim requires the use of an acidulant to "substantially remove the natural flavor of the dried fruit." Ocean Spray substantially removes the natural flavor of its sliced cranberry pieces by drenching them with water during the countercurrent extraction process. These pieces emerge from extraction with approximately 94% of their original sugars and 90% of their original acids removed. After the natural flavor has been removed during extraction to

4

make juice products, Ocean Spray infuses a specific amount of citric acid to the trace amount of acid remaining in the pieces to put back the tart taste of cranberry. ARI's expert agreed that the citric acid *adds* to the acid content of the pieces remaining after extraction. (Second Supp. Woodford Decl. Ex. 10 at 194:19-196:19.) The citric acid does not *remove* any natural flavor from the pieces during infusion as the claim requires.

Left with no basis to assert that Ocean Spray removes flavor with citric acid, ARI discards the common, ordinary meaning of "remove," just as it did with "dried fruit." ARI relies exclusively on declarations to devise a definition of "remove" that it contrives solely for the purposes of supporting an infringement claim. According to these declarations, "remove" does not mean to "take away" natural flavor (the term's common, ordinary meaning) as Ocean Spray does with water during extraction, but rather to "modify" the fruit so the natural flavor can no longer be perceived or recognized. But as the Court pointed out during the March 2 hearing, if the inventors intended to cover "modifying" or "changing" flavor, then the inventors would have simply used those terms. *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1366-67 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee.").

Here again, neither declaration provides any support or explanation for the proposed definition of "remove" and thus, under *Phillips*, are entitled no weight. At his deposition, ARI's expert tried to support his replacement of the term "remove" with "modify." He testified "it's possible but doubtful" that the Mazin patent actually teaches the physical removal of flavor with an acidulant. (Second Supp. Woodford Decl. Ex. 10 at 34:6-37:6.) Rather, he believes the natural flavors of the dried fruit are not being removed, but are being masked by the acidulant. (*Id.* at 36:9-19.) According to Dr. Cadwallader, the acidulant "modifies the flavor profile and thus probably becomes part of the flavor profile." (*Id.* at 36:20-23.)

5

The inventors expressly rejected the notion that "removal" in the claim actually means "modify." During prosecution, the examiner made the very same argument about "removing" flavor that Dr. Cadwallader made at his deposition to reject the claims. The examiner found it "highly doubtful" that the acid would remove flavor and said that "applicants' assertion is without support and ignores the contribution of the acid to the total flavor profile." (Woodford Ex. 3 at 4.) The use of acid to add or modify flavor was a well-known concept in the prior art. In response, the inventors stood by the use of "remove" in the claim, and argued that the examiner had not provided any "acceptable evidence or reasoning" that the acidulant did not actually remove flavor. (*Id.* Ex. 4 at 8.) The inventors then distinguished the prior-art Barlow reference (which involved drenching the dried fruit in flavoring) because Barlow was not "removing" flavor, even though the Barlow fruit had a distinctly different flavor after treatment. (*Id.* at 9.) In other words, "remove" meant "remove" and did not cover a "modification" so the natural flavor of the fruit cannot be perceived or recognized. ARI's definition of "remove" is entirely at odds with the intrinsic evidence.

**B.     Ocean Spray Cannot Infringe the Asserted Claim Under the Doctrine of Equivalents As a Matter of Law.**

ARI has failed to advance sufficient evidence to support a claim for infringement under the doctrine of equivalents as a matter of law. And, at the March 2 hearing, Ocean Spray specifically pointed out this failure. Since that time, the doctrine of equivalents has taken on greater significance for ARI because its expert admitted that Ocean Spray's process does not literally satisfy the limitations of claim 1:

> Q:     I understand that. You understand what the words [of claim 1] mean, and you've compared Ocean Spray's process to those words. Do those words describe Ocean Spray's process?
> A:     Do these –
> MR. WERNER: Objection. Vague.
> THE WITNESS: I'm not sure if you mean literally or by interpretation.

6

        BY MR. WOODFORD:
Q:    Literally?
A:    No.

(Second Supp. Woodford Decl. Ex. 10 at 87:2-88:8.)[3]  Because of this concession, the only way ARI can defeat Ocean Spray's summary judgment is to show infringement by equivalence. But ARI has not made this showing and cannot do so as a matter of law.

    ARI bears the burden of proving infringement and therefore must present particularized evidence and linking argument for each claim element it contends is met by equivalence to avoid summary judgment of noninfringement.  *PC Connector Solutions v. SmartDisk*, 406 F.3d 1359, 1364 (Fed. Cir. 2005); *Zelinski v. Brunswick*, 185 F.3d 1311, 1317 (Fed. Cir. 1999); *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1389 (Fed. Cir. 1992).  In its opposition brief, ARI mentions the word "equivalently" in passing with respect all three limitations at issue (ARI Opp'n Br. at 1, 9, 21), but does not even attempt to put forth evidence for the "substantially non-sticky" limitation or the limitation relating to the use of an acidulant to "remove" natural flavor. On that basis alone, summary judgment of noninfringement under the doctrine of equivalents for these two limitations should be granted.

    Even where ARI did present some form of evidence and argument to support its claim of equivalence, that evidence and argument is legally insufficient.  For the "dried fruit" limitation, ARI relies solely on testimony from Mr. Mantius where he says that the decharacterized fruit pieces act as a carrier, are infused with infusion syrup, and ultimately take on a cherry flavor. (ARI Opp'n Br. at 19.)  Although ARI claims it is performing a "function, way, result" analysis, ARI never articulates what Mr. Mantius's testimony has to do with the "dried fruit" limitation of

---

[3]    ARI has not identified any expert testimony to support its claims of infringement under the doctrine of equivalents.  This is not surprising since ARI's expert testified that although he has heard of the doctrine of equivalents, he does not understand what it means and has not formed any opinions on the issue. (Second Supp. Woodford Decl. Ex. 10 at 241:1-242:11.)

claim 1, let alone how dried fruit and a decharacterized fruit piece are equivalent. ARI's hand-waving is insufficient. *See, e.g.*, *Malta v. Schulmerich Carillons, Inc.*, 952 F.2d 1320, 1326-1327 (Fed. Cir. 1991) ("[W]hat is clearly lacking in that testimony is a sufficient explanation of both *why* the overall function, way, and result of the accused device are substantially the same as those of the claimed device and *why* the plastic/slotted plastic/felt arrangement is the equivalent of the claimed buttons limitation.").

Even if ARI could sufficiently articulate an infringement theory, it would fail as a matter of law under the doctrines of claim vitiation and prosecution history estoppel. A finding of equivalence between "dried fruit" and a fruit piece with 90% moisture would improperly vitiate or eliminate the "dried fruit" limitation from the claim. *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1357-62 (Fed. Cir. 2005); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998). Also, since the inventors distinguished fresh fruit (which included frozen and canned fruit) from dried fruit to overcome the Agarwala reference (Woodford Decl. Ex. 4 at 7), a finding of equivalence between decharacterized fruit and dried fruit would improperly allow ARI to recover claim scope surrendered during prosecution and therefore must be rejected. *K-2 Corp.*, 191 F.3d at 1366-67.

**C.     The Use of the Term "Comprising" in the Preamble of the Asserted Claim Cannot Be Used To Read the "So Forming" Limitation Out of the Claim.**

After the claim recites three steps for preparing a dried fruit product, it requires that the product of those three steps be substantially non-sticky: "and so forming a flavored dried fruit product … having an outer surface which is substantially non-sticky." If the "so forming" limitation is to have any meaning, the three recited steps, and only those steps, must produce a non-sticky product. Indeed, the inventors repeatedly relied on the "so forming" language to

8

distinguish the Barlow process, which reduced the stickiness by rinsing the outer surface of the fruit with water. (Woodford Decl. Ex. 2, lines 75-81; Ex. 4 at 5-6, 10.)

The steps in Ocean Spray's process that allegedly correspond to the three claim steps do not "so form" a non-sticky product. Ocean Spray's steps have the opposite effect—its fruit pieces are extremely sticky. (Scott Decl. ¶¶ 12-14; Mantius Decl. ¶¶ 9-10; Supp. Woodford Decl. Ex. 9 at 57:16-17.) The need for extensive oiling and declumping to reduce stickiness demonstrates that Ocean Spray cannot satisfy the "so forming" limitation.

ARI does not dispute that the product formed by Ocean Spray's process after the three accused steps is sticky. Instead, ARI ignores the "so forming" limitation entirely in its opposition brief and attempts to shift the focus to the state of Ocean Spray's "final" product, which is both oiled and declumped. (*See* ARI Opp'n Br. at 21-25.) The only basis provided by ARI for such a leap is the phrase "flavored dried fruit product" in the last clause of the claim. (*Id.*) But that term refers to the dried fruit that was treated (and rehydrated), dried again, and then flavored in claimed steps (a)-(c), not to any "final" product. As explained in Ocean Spray's briefs, ARI's view of the claim would improperly read out the "so forming" limitation touted by the inventors both in the patent and throughout prosecution.

At the March 2 hearing, ARI's counsel backed away from the "final product" argument and advanced an argument that was never mentioned in ARI's opposition brief. ARI's counsel now claims that because the preamble of the asserted claim includes the term "comprising," Ocean Spray cannot avoid infringement because it performs the additional steps of oiling and declumping. (March 2, 2006 Tr. at 22-24.) This new argument completely misses the mark. Ocean Spray agrees that the term "comprising" generally means a claim is open-ended and that infringement cannot be avoided simply because additional steps are employed. *See Moleculon*

9

*Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1271 (Fed. Cir. 1986).  But Ocean Spray does not contend, nor has it ever, that there is no infringement because it employs the additional steps of oiling and declumping.  Ocean Spray's oiling and declumping of the fruit pieces only demonstrates that the fruit "so formed" after the three general steps in the claim is extremely sticky and cannot possibly satisfy the "substantially non-sticky" requirement.

At bottom, ARI's new argument is simply another shot at reading the "so forming" limitation out of the claim.  But "[c]omprising is not a weasel word with which to abrogate claim limitations."  *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1380 (Fed. Cir. 1998).  And any attempt to use the term to change the scope of the claims should be rejected.  *E.g.*, *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1332 (Fed. Cir. 2001) (rejecting infringement argument based on the term "comprising" because it would eliminate a claim limitation); *Jeneric/Pentron, Inc. v. Dillon Co., Inc.*, 205 F.3d 1377, 1382-83 (Fed. Cir. 2000) (rejecting argument that a product containing 1.61% of a compound still infringed a claim requiring a range of 0-1% because the claim used the "comprising" transition); *Spectrum Int'l*, 164 F.3d at 1379-1380 (rejecting the use of "comprising" to recover subject matter that was excluded during prosecution).

## **CONCLUSION**

For the reasons set forth herein and in Ocean Spray's previous filings, Ocean Spray respectfully requests that the Court grant its motion for summary judgment of noninfringement.

| | |
|---|---|
| Dated: May 1, 2006 | s/William R. Woodford |
| | William R. Woodford (*pro hac vice*) |
| | **FISH & RICHARDSON P.C.** |
| | 60 South Sixth Street |
| | Suite 3300 Dain Rauscher Plaza |
| | Minneapolis, MN 55402 |
| | (612) 335-5070 Telephone |
| | (612) 288-9696 Facsimile |
| | |
| | **KIRKPATRICK & LOCKHART** |
| | **NICHOLSON GRAHAM LLP** |
| | Michael E. Zeliger (BBO # 633654) |
| | State Street Financial Center |
| | One Lincoln Street |
| | Boston, MA  02111 |
| | (617) 261-3100 Telephone |
| | (617) 261-3175 Facsimile |
| | |
| | *Attorneys for Defendant* |
| | *Ocean Spray Cranberries, Inc.* |

60349560.doc

11