## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMAZIN' RAISINS INTERNATIONAL, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>OCEAN SPRAY CRANBERRIES, INC.,<br><br>    Defendant. | Civil Action No. 1:04-cv-12679-MLW |

## MEMORANDUM IN SUPPORT OF MOTION TO AMEND JUDGMENT AND AWARD ATTORNEYS' FEES

**KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP**
Michael E. Zeliger (BBO # 633654)
State Street Financial Center
One Lincoln Street
Boston, MA  02111
(617) 261-3100 Telephone
(617) 261-3175 Facsimile

William R. Woodford (*pro hac vice*)
**FISH & RICHARDSON P.C.**
60 South Sixth Street
Suite 3300 Dain Rauscher Plaza
Minneapolis, MN 55402
(612) 335-5070 Telephone
(612) 288-9696 Facsimile

*Attorneys for Defendant
   Ocean Spray Cranberries, Inc.*

Dated:  September 14, 2007

**TABLE OF CONTENTS**

**Page(s)**

I.  FACTS ........................................................................................................................ 1

    A.  Alleged Infringement – ARI Filed and Prosecuted a Baseless Case ................. 2

    B.  Invalidity – If ARI's Constructions Were Correct,
        the Claim Would Have Been Invalid ................................................................ 4

    C.  Even if the Mazin Patent Were Valid and Infringed ARI May Not Own It ...... 5

    D.  ARI's Settlement Posturing was Unprofessional and Sanctionable .................. 7

II.  ARGUMENT ............................................................................................................. 8

    A.  This is An Exceptional Case .............................................................................. 8

        1.  Bad Faith / Frivolous Litigation ................................................................. 8

        2.  Litigation Misconduct ................................................................................ 9

    B.  ARI's Counsel should be Held Accountable .................................................... 9

    C.  The Court May Exercise Inherent Powers to Sanction ARI and its Counsel .... 10

    D.  Measuring Ocean Spray's Attorneys' Fees ...................................................... 11

        1. The Lodestar Approach for Determining Reasonable Attorney Fees .......... 11

        2. Ocean Spray's Attorneys' Fees ..................................................................... 12

        3. Departures from Lodestar ............................................................................. 12

    E.  Multiplier Factor ............................................................................................... 14

III.  CONCLUSION ......................................................................................................... 14

**TABLE OF AUTHORITIES**

Federal Cases

*AGFA Corp. v. Creo Prod., Inc.,* 2004 WL 2387288, at *4 (D.Mass. 2004) .............................. 11
*Ampicillin Antitrust Litigation*, 81 F.R.D. 395, 405 (D.C.D.C. 1978).......................................... 14
*Aptix Corp. v. Quickturn Design Systems, Inc.* 269 F.3d 1369, 1378 (Fed. Cir. 2001) ............... 10
*Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989)............. 8
*Capitol Silver Mines, Inc. v. Phelan, et. al.*, Civil Action No. 99-912 AHS ................................. 6
*Cent. Soya Co. Inc. v. Geo. A. Hormel & Co.,* 723 F.2d 1573, 1578 (Fed. Cir. 1983)................. 11
*Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ..................................................................... 10
*Codex Corp. v. Milgo Elec. Corp.,* 541 F. Supp. 1198, 1202 (D. Mass. 1982), *aff'd,* 717
    F.2d 622 (1st Cir. 1983), *cert. denied,* 466 U.S. 931 (1984) ............................................. 11
*Eltech Systems Corp. v. PPG Industries, Inc.,* 903 F.2d 805, 811 (Fed. Cir. 1990) ................... 8, 9
*Enpat, Inc. v. Microsoft Corporation*, 26 F. Supp. 2d 811 (E.D. Va. 1998).................................. 9
*Furtado v. Bishop*, 635 F.2d 915, 919-920 (1st Cir. 1980)..................................................... 11, 13
Grendel's *Den, Inc. v. Larkin*, 749 F.2d 945, 950-951 (1st Cir. 1984) ......................................... 13
*Haynes International, Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed. Cir. 1994)...................... 9
*Hensley v. Eckerhart*, 461 U.S. 424, 433-34, (1983) ................................................................... 11
*Hew Corp. v. Tandy Corp.*, 480 F. Supp. 758, 765 (D. Mass. 1979)............................................ 14
*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974) ......................... 12
*King v. Greenblatt*, 560 F.2d 1024, 1027 (1st Cir. 1977), *cert. denied,* 438 U.S. 916
    (1978) .................................................................................................................................. 13
*L.E.A. Dynatech v. Allina*, 49 F.3d 1527, 1530 (Fed. Cir. 1995)................................................. 10
*Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1068 (Fed. Cir. 1983).................................. 11
*Nelson v. Soo Line R.R. Co.*, 58 F.Supp. 2d 1023, 1027 (D.Minn. 1997)....................................... 3
*Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1249, n.9 (Fed. Cir. 2003) ................... 10
*Roadway Express, Inc.  v. Piper*, 447 U.S. 752, 762 (1980)........................................................ 10
*Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996)..................................... 9
*Waymark Corp. v. Porta Systems Corp.*, 334 F.3d 1358 (Fed. Cir. 2003) .................................. 10

**FEDERAL STATUTES**

28 U.S.C. § 1927 .................................................................................................................. 1, 8, 10
35 U.S.C. § 285 ............................................................................................................. 1, 5, 8, 9, 10

This is a case that never should have been filed. The plaintiff, Amazin Raisins, Inc. ("ARI"), and its counsel never had a basis for bringing the case, and throughout the litigation, turned a blind eye to the merits. Remarkably, despite demanding and being provided product samples, ARI never even tested them for infringement.

ARI and its counsel were advised repeatedly, both before and during the litigation, that there was no conceivable infringement and that their patent was invalid if construed the way they argued it should be. Instead of properly investigating, ARI and its counsel responded by seeking an exorbitant settlement based purely on Ocean Spray's cost of defense. As detailed below, during a Court ordered settlement meeting, ARI's contingent-fee counsel told Ocean Spray that it had "budgeted" for the case, that it was using the case for "training" a younger attorney, and that Ocean Spray should settle to avoid paying for an expensive defense. ARI's outrageous demands continued until the Court granted summary judgment, on multiple grounds, and dismissed the case.

This litigation was a willful abuse of the judicial system for which ARI and its counsel should be held accountable. Accordingly, Ocean Spray requests a finding under 35 U.S.C. § 285 that this case was "exceptional," and pursuant to that statute, 28 U.S.C. § 1927, and the inherent powers of the Court, that both ARI and its counsel be ordered to reimburse Ocean Spray for its reasonable attorneys' fees.

## I. FACTS

The Court has seen only a portion of ARI's unreasonable arguments and positions. The full story is laid out below. First, we demonstrate that ARI never had a basis to allege infringement and never even tested Ocean Spray's products. Second, we show that even if ARI's absurd claim construction positions had been adopted, their asserted claim would have

been clearly anticipated by prior art. ARI was advised of this point as well, but ignored it. Third, we show that ARI may not even own this patent. Mr. Mazin assigned it away several years before the litigation, and then tried to hide this fact during discovery. Ocean Spray only learned of it through independent investigation. Finally, we detail the conduct of ARI's lead counsel during settlement discussions.

### A. Alleged Infringement – ARI Filed and Prosecuted a Baseless Case

The Court disposed of ARI's infringement case as a matter of law. We briefly revisit those issues to point out that ARI never had a basis for bringing and maintaining this case – because, among other things, it was absurd for ARI to claim that drenching fruit in water somehow created "dried fruit." Yet, this bizarre notion was the foundation of ARI's infringement case.

Beginning in January of 2002, ARI contacted Ocean Spray concerning U.S. Pat. No. 5,188,861. (Exs. 1, 2.)[1] Ocean Spray promptly responded and pointed out that Ocean Spray employed its own, patented method of manufacturing sweetened dried fruits that was different from the Mazin patent. (Exs. 3, 4.) More than a year later, ARI resurfaced and again brought the Mazin patent to Ocean Spray's attention. On June 19, 2003, Ocean Spray explained to ARI that it did not infringe the Mazin patent for at least two reasons: (1) it did not process dried fruit; and (2) it did not use an acidulant to remove flavor – both requirements of the claims of the Mazin patent. (Exs. 3, 4.)[2] Ocean Spray also described its manufacturing process in considerable detail and referred ARI to the disclosure in U.S. Patent No. 5,320,861. These communications expressly informed ARI that Ocean Spray's process begins with frozen fruit and uses water, not

---

[1] Exhibit numbers refer to the exhibits to the Declaration of Elizabeth Featherman filed herewith.

[2] These are the very same conclusions the Court reached in its August 20, 2007 Order (the "Order") (Docket No. 101).

acid, to extract flavor. In other words, the fruit begins wet and is then immersed in water. Thus, ARI was aware long before filing this action of facts that doomed its infringement case.

However, ARI did not relent. It asked for product samples and explained that such samples "will facilitate our evaluation of your position and may provide the basis for an early resolution." (Ex. 6.) ARI repeated that request in November 2003, February 2004, and May 2004, emphasizing ARI's perceived significance of the product samples. (Ex. 7.) This was simply a rouse, because ARI had already known, for more than a year, that Ocean Spray treated frozen fruit with water to remove flavor and used citric acid to restore flavor. It was simply contriving a basis for bringing suit, but as proven later, it had absolutely no interest in measuring the properties of the samples. On July 22, 2004, ARI filed this action for patent infringement.[3]

During discovery, Ocean Spray delivered product samples to ARI and its expert during an inspection of an Ocean Spray facility. However ARI *never* tested the material. (Doc. No. 101 at 31). This was the very same material that ARI sought repeatedly, which it contended would allow it to evaluate infringement and could provide the basis of an early resolution. ARI never tested the material because it was clear that the results would have been fatal to its infringement case.[4] There was never any doubt that Ocean Spray treats wet fruit in its process and uses no acid to remove flavor.

---

[3] ARI initially filed the action in Minnesota, where none of the parties had any significant connections. ARI is based in Eastern Canada, while Ocean Spray is based in Eastern Massachusetts. Only ARI's counsel, Merchant & Gould resides in Minnesota. Ocean Spray promptly wrote to ARI's counsel and noted the following: "Based on our review of publicly-available documents, we are not aware of any factor that would make it more convenient for either party to litigate in this District aside from your client's choice of counsel, which is irrelevant in the Court's determination of the most convenient forum. *See, e.g., Nelson v. Soo Line R.R. Co.*, 58 F.Supp. 2d 1023, 1027 (D.Minn. 1997) ('[I]t is axiomatic that convenience to plaintiff's counsel is not a factor to be considered in deciding the propriety of transfer.') If you are aware of any information that supports litigating this case in the District of Minnesota, please advise us immediately." (Ex. 8.) ARI provided no such information and Ocean Spray incurred the unnecessary expense of moving to transfer the case to Massachusetts.

[4] ARI instead attempted to prop up its infringement case with a supposed "admission" it elicited from an Ocean Spray employee: "Q. Decharacterized fruit pieces is what Ocean Spray calls the dried fruit pieces that enter the countercurrent infuser, correct? MR. ZELIGER: Objection to the form of the question. You may answer. A. That is correct." (Ex. 9, pg. 5, lines 18-23.) However, the so-called admission (which happened to be the first question

Rather than yield, ARI ignored these facts and concocted a bizarre infringement theory centered on the allegation that soaking wet fruit could somehow create dried fruit. The Court summarily rejected ARI's theory, finding that it was "contrived solely by counsel for the purposes of this litigation." (Doc. No. 101 at 28.) Moreover, the Court found ARI's expert opinions to be "clearly at odds with the intrinsic record." (Id. at 29.) In short, ARI and its counsel either knew or should have known better than to initiate and prosecute this action because it could not hope to prove infringement.

**B.    Invalidity – If ARI's Constructions Were Correct, the Claim Would Have Been Invalid**

ARI also knew or should have known that its contrived claim construction, even if adopted, rendered the asserted claim invalid. Again it ignored the merits of this issue and pressed blindly ahead.

In mid 2006, Ocean Spray discovered prior art that read directly on ARI's claim, according to ARI's construction. This reference disclosed treating a fruit with an initial step of "moisture removal…through osmotic transfer," (Ex. 10, Col. 2, lines 62-64), which matches ARI's contrived construction of dried fruit. Indeed, ARI's expert testified, "[if the fruit] has undergone any moisture loss whatsoever or moisture exchange, it has – now it's in a dried fruit form." (Ex. 11, p. 149, lines 5-8.) Likewise, inventor Amir Lalji opined, "So to me, dried fruit means anything that has lost water or liquid…it doesn't matter how many percent." (Ex. 12, p.

---

and answer of the deposition) was based on an intentionally misleading question. Moreover, in briefing to the Court, ARI deliberately ignored the portion of Mr. Mantius' testimony where he explained unequivocally that that decharacterized fruit could not be dried fruit. Mr. Mantius testified in the same deposition, in response to questions from ARI's counsel, "[i]t's inconceivable that the decharacterized fruit pieces fall within the definition of dried fruit because that goes against the laws of physics." (Id., pg. 153, lines 16-19.) When ARI's counsel asked him to assume that decharacterized fruit could be dried fruit, Mr. Mantius responded: "[i]t's hard for me to respond to a question like that because it's really quite amazing that a question like that would be asked. It's just so far outside the realm of the physical world to be considering decharacterized fruit dry … I mean, a decharacterized fruit is by definition, I mean, it is a wet fruit. It is a hydrated fruit." (*Id.* at 164:6-15.) Despite this testimony, ARI represented to the Court that Ocean Spray "admits" decharacterized fruit is dried fruit.

41, line 20 – p. 42, line 2.)  Similarly, inventor Jack Mazin testified, "Dried fruit is really anything that has less moisture than the original fruit."  (Ex. 13, p. 46, line 25 – p. 47, line 1.)

Ocean Spray promptly notified ARI of this reference and asked ARI to immediately drop its case.  (Ex. 14.)  In the letter, Ocean Spray provided a detailed claim chart which matched disclosures from the prior art reference to each element of ARI's asserted claim.  (Id.)  This prior art left no doubt that ARI's case could not survive, even if ARI somehow prevailed at claim construction.  Citing Fed. R. Civ. P. 11 and 35 U.S.C. § 285, Ocean Spray requested immediate dismissal.  ARI responded as follows:

> As you might expect, we do not hold the same view as you do with respect to the '698 patent, disclosed to ARI for the first time in your letter.  It will take some time for us to fully analyze your arguments, but it clear to us that no definitive conclusion can be made until the Court has construed the claims of the Mazin patent.

(Ex. 15.)  ARI's comment that "no definitive conclusion can be made until the Court has construed the claims" is non-responsive and illogical.  If the Court agreed with Ocean Spray's proposed constructions, then there would be no infringement, and the case should be dropped.  If the Court agreed with ARI, then the claim was anticipated, and the case should be dropped.  ARI's only hope was a claim construction that neither party proposed, but which would avoid the prior art and still covers Ocean Spray's process.  ARI never even proposed such a construction and indeed none exists.

ARI failed to provide any further response about this prior art.

### C. Even if the Mazin Patent Were Valid and Infringed ARI May Not Own It

On December 7, 1998, more than three years before filing this action, Jack Mazin executed a document that purported to assign his entire right, title, and interest in ARI (and therefore the Mazin patent) to a company called Pacific Standard Financial Group, Inc.  (Ex. 16.)  ARI failed to produce documents or any other information about this fact in its preliminary

- 5 -

discovery responses. Ocean Spray learned of it by independent investigation and third party discovery. Even when confronted with this issue, ARI produced only limited responses to Ocean Spray's discovery requests.

While investigating this issue, Ocean Spray also discovered litigation in the United States District Court for the Central of District of California that concerned, in part, the ownership of ARI and the Mazin patent (*Capitol Silver Mines, Inc. v. Phelan, et. al.*, Civil Action No. 99-912 AHS). The defendants in that case alleged that they had acquired ARI and therefore Mr. Mazin's patent. The case was tried to the Court on February 8, 2005. Less than two weeks before trial, Mr. Mazin caused ARI to transfer the Mazin patent to a company called Amazing Fruit Products, Ltd. (Ex. 17), presumably so that it would be insulated from an adverse verdict. On February 28, 2005, the California court issued Findings of Fact and Conclusions of Law after Bench Trial (Ex. 18) in which it determined that the defendants had not acquired ARI and therefore had not acquired the Mazin patent. Having dodged that bullet, Mr. Mazin surreptitiously reassigned the Mazin patent to ARI. (Ex. 19.) However, ARI never disclosed to Ocean Spray or to this Court that it had assigned the Mazin patent to a different entity – even though this occurred while this action was pending and while Ocean Spray had discovery requests directed to this very issue (Ex. 20: Request No. 38, "All documents and things concerning the ownership of the '861 patent"; Request No. 39, "All documents and things concerning the alleged assignment of the '861 patent to ARI.") In short, it appears that the plaintiff in this case did not own the patent it was asserting for several months while this action was pending and never bothered to tell Ocean Spray or the Court. Moreover, Ocean Spray's investigation into this issue uncovered a complex series of additional assignments which casts serious doubt on who owns the Mazin patent. Attached to the declaration of Elizabeth Featherman is a summary of the assignments and the collection of assignments themselves. (Ex. 21.)

When Ocean Spray discovered these issues, it complained bitterly to ARI and demanded a full explanation. (Ex. 14.) Rather than explain, ARI simply noted "it appears clear to us that ARI, Inc is the owner of the Mazin patent." (Ex. 15.) Ocean Spray continued to investigate this issue and take third party discovery, at considerable expense. As a result of this investigation, Ocean Spray believes that who owns the Mazin patent remains confused and unresolved. Ignoring these concerns as well, ARI pressed ahead.

### D.   ARI's Settlement Posturing was Unprofessional and Sanctionable

ARI's conduct during settlement negotiations is perhaps the most telling evidence of its intentions in this case. On April 12, 2005, ARI transmitted a written settlement proposal to Ocean Spray. Notwithstanding all of the problems with its case, ARI demanded $2,000,000.00 for past damages and a running royalty rate of 3.5% on all future sales of the accused sweetened dried cranberry products -- which amount to millions more. (Ex. 22.) As its case unraveled, ARI's settlement demands actually grew. Eighteen months later, after it was fully aware of all of the problems with its case discussed above, ARI demanded either a payment of $10,000,000.00 or $5,000,000 and a running royalty of 8% or a $1,000,000.00 and 3% royalty if Ocean Spray agreed to other untenable restrictions. (Ex. 23.)

Apart from the outrageous size of ARI's demand, its negotiating tactics were most condemning. The parties and counsel met in Washington, DC on March 24, 2006, pursuant to the Court's order that they engage in settlement discussions. (Docket No. 83.) During that meeting, ARI's lead counsel, Doug Williams, boasted to Ocean Spray that Merchant & Gould, Mr. Williams' firm, had a contingent fee arrangement with ARI. (Sharenow Decl. ¶ 8.) He further explained that his firm had already budgeted and committed the resources to try this case and that doing so would be good training for his younger colleague. (Sharenow Decl. ¶¶ 9-10.) He even declared that ARI had turned full settlement authority over to Merchant & Gould.

- 7 -

(Sharenow Decl. ¶ 11.) By contrast, he continued, Ocean Spray would have to pay for the cost of its defense, and for this reason, it should pay millions of dollars to settle the dispute. (Sharenow Decl. ¶ 12.) ARI and its counsel underestimated Ocean Spray's resolve. Ocean Spray refused to pay this extortion, and did in fact incur substantial costs defeating this lawsuit. ARI and its counsel should now be ordered to pay for the cost of that defense.

## II.     ARGUMENT

ARI and its counsel's conduct justifies an award of attorneys fees in this case pursuant to several legislative and equitable provisions, including 35 U.S.C. § 285, 28 U.S.C. § 1927, and the inherent powers of this Court.

### A.     This is An Exceptional Case

35 U.S.C. § 285 provides fee shifting for a prevailing party in exceptional patent cases. Two noted categories of exceptional cases that warrant such awards are: (1) bad faith or frivolous cases; and (2) cases in which the losing party has engaged in litigation misconduct. *See Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989).

#### 1.     *Bad Faith / Frivolous Litigation*

To prove bad faith, the moving party must show "the other party guilty of bad litigation by clear and convincing evidence in light of the totality of the circumstances." *Eltech Systems Corp. v. PPG Industries, Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990). One form of such bad faith is "[w]here…the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness or gross negligence." *Id*. In this case, ARI's bad faith is evident from its continuous refusal to recognize that its case was meritless. The Mazin patent was not infringed or plainly anticipated, and ARI may not have even owned or controlled the Mazin patent. In particular, ARI's theory that frozen fruit immersed in water could be "dried

fruit" had no legal bases. Moreover, its outrageous conduct during settlement negotiations is another of the "totality of the circumstances" that shows bad faith.

ARI's suit was also demonstratively frivolous. An infringement suit "is frivolous where the patentee knew, or should have known by reasonable investigation, that the suit was groundless." *Enpat, Inc. v. Microsoft Corporation*, 26 F. Supp. 2d 811 (E.D. Va. 1998) (citing *Haynes International, Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed. Cir. 1994)). ARI's willful blindness to the problems with its case is no defense. *Eltech Systems Corp. v. PPG Industries, Inc.*, 903 F.2d at 810 ("studied ignorance…is substantially more than simple negligence"). Here, ARI's repeated refusals to acknowledge fatal flaws with its case—or to even test the product samples it demanded—were deliberate and not merely careless.

### 2. *Litigation Misconduct*

"Litigation misconduct and unprofessional behavior are relevant to the award of attorney fees, and may suffice to make a case exceptional under § 285." *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996). ARI and its counsel's strategy of ignoring the merits while flaunting the disparate costs of running the case is precisely the sort of "misconduct and unprofessional behavior" that warrants a fees award. In particular, counsel's citing their contingent fee arrangement, their having "budgeted" for the case, and their desire to train a younger attorney, all while running up Ocean Spray's legal costs, and then using those facts in an effort to leverage settlement, is gross misconduct.

### B. <u>ARI's Counsel should be Held Accountable</u>

ARI's counsel's conduct and strategy in this are sanctionable, separate and apart from ARI's behavior. "An attorney…who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Waymark Corp. v. Porta Systems*

*Corp.*, 334 F.3d 1358 (Fed. Cir. 2003) (citing 28 U.S.C. § 1927). Attorneys and clients can be held jointly and severally liable for attorneys' fees when together they maintain frivolous patent infringement lawsuits, provided that the Court awards fees against the client pursuant to 35 U.S.C. § 285 against the lawyer pursuant to 28 U.S.C. § 1927. *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1249, n.9 (Fed. Cir. 2003).

ARI's counselors are sophisticated, experienced patent litigators. They knew or reasonably should have known that ARI's case was meritless. Accordingly, the very decision to initiate and then maintain this action multiplied the proceedings unreasonably. Moreover, their conduct during settlement negotiations demonstrated that this entire case was an abuse of the judicial process – the very thing that Section 1927 is designed to sanction. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762 (1980) (The purpose of the statute is "indifferent to the equities of a dispute and to the values advanced by the substantive law. It is concerned only with limiting the abuse of court processes.")

### C. The Court May Exercise Inherent Powers to Sanction ARI and its Counsel

In addition to the statutory basis for shifting fees, the Court has inherent powers to shift fees in this case. *L.E.A. Dynatech v. Allina*, 49 F.3d 1527, 1530 (Fed. Cir. 1995). ("District Courts possess inherent powers to assess attorneys fees as a sanction when a party acts in bad faith, vexatiously, wantonly, or for oppressive reasons."); s*ee also Aptix Corp. v. Quickturn Design Systems, Inc.* 269 F.3d 1369, 1378 (Fed. Cir. 2001) ("Within [certain limitations], courts are free to sanction bad faith conduct that arises during the course of litigation. These 'inherent powers' to punish bad faith conduct during litigation are 'necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'") (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)). ARI and its counsel's conduct, as described

above, constitute bad faith and abuse of process.  The Court has the power to sanction them accordingly.

### D. Measuring Ocean Spray's Attorneys' Fees

In total, Ocean Spray seeks reimbursement for $379,824.00 of attorneys' fees, plus interest.  Ocean Spray submits that this is a very modest total for defending a patent infringement case—even a meritless one.

#### 1. The Lodestar Approach for Determining Reasonable Attorney Fees

The fees awardable must be reasonable in amount, both in terms of the rate and the number of hours spent.  *See Lam, Inc. v. Johns-Manville Corp*., 718 F.2d 1056, 1068 (Fed. Cir. 1983).  Determining this amount is within the sound discretion of the Court.  *Id.*   The award may also include litigation expenses other than lawyer time.  *Cent. Soya Co. Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983).

One well-established method of determining a reasonable award of attorneys' fees is the so-called "lodestar" approach:

> First, the "lodestar" is calculated by multiplying a reasonable hourly rate by the number of hours spent, excluding time "beyond that consistent with a standard of reasonable efficiency and productivity." . . .   Second, the lodestar is adjusted up or down to take account of factors not included in its initial calculation.

*Codex Corp. v. Milgo Elec. Corp.,* 541 F. Supp. 1198, 1202 (D. Mass. 1982), *aff'd,* 717 F.2d 622 (1st Cir. 1983), *cert. denied*, 466 U.S. 931 (1984); *see also Furtado v. Bishop*, 635 F.2d 915, 919-920 (1st Cir. 1980) (approving the lodestar approach); *Hensley v. Eckerhart*, 461 U.S. 424, 433-34, (1983) (same); *AGFA Corp. v. Creo Prod., Inc*., 2004 WL 2387288, at *4 (D.Mass. 2004) (approving the lodestar approach in a patent case and awarding a sum of $2,724,229, consisting of attorneys' fees in the sum of $2,221,552 and costs (including expert fees) in the sum of $502,677).

2.  *Ocean Spray's Attorneys' Fees*

Ocean Spray's principal attorneys in this matter were Michael Zeliger and William Woodford. The total hours spent by each as well as their billing rates are summarized in Exhibit B to the Declaration of Michael E. Zeliger. These rates ranged from $250 per hour for an associate in 2004 to $525 per hour for a partner of the firm of K&L Gates in 2007. Ocean Spray submits that the time charges and billing rates were reasonable for attorneys of their technical and legal expertise and specialization.

Ocean Spray has excluded from its fee request attorneys' fees spent on its pre-suit noninfringement opinion. Moreover, Ocean Spray seeks only the fees attributable to work performed by Mr. Zeliger and Mr. Woodford. These fees relate to transferring the matter to this Court, fact discovery, expert discovery and dispositive motion practice, including a technical tutorial and combined Markman and summary judgment hearing.

The overall fees including disbursements invoiced and paid by Ocean Spray in this matter were $533,193.96, as of the date of the summary judgment order. Of that amount, Ocean Spray claims an award, based upon the accompanying declaration, in the amount of $379,824.00, with interest, from the entry of judgment.

3.  *Departures from Lodestar*

Courts may adjust the "Lodestar" total upward or downward, depending on the factors set forth in *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717-719 (5th Cir. 1974). These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the

attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Consideration of the "Johnson Factors" has been approved by the U.S. Court of Appeals for the First Circuit and by the Supreme Court. *See Hensley v. Eckerhart,* 461 U.S. 424, 434 n. 9 (1983) (noting, however, "that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate"); *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950-951 (1st Cir. 1984); *Furtado v. Bishop,* 635 F.2d at 920 (1st Cir. 1980); *King v. Greenblatt*, 560 F.2d 1024, 1027 (1st Cir. 1977), *cert. denied*, 438 U.S. 916 (1978).  The Johnson factors support Ocean Spray's request.  For example:

(1) This patent case has been pending for over five years.  Ocean Spray developed numerous defenses including noninfringement, invalidity, unenforceability and lack of ownership.

(2)  Issues of scientific fact needed to be analyzed and presented to the court, and issues of claim construction and patent law had to be briefed and decided by the Court.

(3) Because of the legal and technical complexity of the case, a high degree of skill was required to perform the legal services properly.

(4) Ocean Spray's total fees incurred were modest for a patent case in Boston.

(5) The fee charged was hourly.

(6) The results obtained were excellent for Ocean Spray.

(7)  As set forth in the accompanying affidavits, the experience, reputation, and ability of the attorneys was appropriate for the case.

(8) Because the fees requested are relatively low, Ocean Spray expects that fee awards in similar patent infringement cases would be significantly higher than those requested by Ocean Spray.

### E. Multiplier Factor

Where, for example, the results obtained are excellent, or other *Johnson* factors are significant, it is appropriate to apply a "multiplier" factor to increase the base "lodestar" figure. *See, e.g., Hew Corp. v. Tandy Corp.,* 480 F. Supp. 758, 765 (D. Mass. 1979) (1.25 multiplier in light of contingent nature of case); *In re Ampicillin Antitrust Litigation*, 81 F.R.D. 395, 405 (D.C.D.C. 1978) (1.5 multiplier for "excellent result"). Ocean Spray defers to the Court's judgment on this factor.

### III. CONCLUSION

For the foregoing reasons, Ocean Spray requests an aware of reasonable attorneys' fees jointly and severally from ARI and its counsel.

Dated: September 14, 2007

/s/ Michael E. Zeliger
**KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP**
Michael E. Zeliger (BBO # 633654)
State Street Financial Center
One Lincoln Street
Boston, MA 02111
(617) 261-3100 Telephone
(617) 261-3175 Facsimile

William R. Woodford (*pro hac vice*)
**FISH & RICHARDSON P.C.**
60 South Sixth Street
Suite 3300 Dain Rauscher Plaza
Minneapolis, MN 55402
(612) 335-5070 Telephone
(612) 288-9696 Facsimile

*Attorneys for Defendant
    Ocean Spray Cranberries, Inc*

### CERTIFICATE OF SERVICE

I hereby certify that this document as well as the related declarations of Alana Sharenow, Elizabeth Featherman and Michael Zeliger, with corresponding exhibits, all of which are being

- 15 -

filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

>                                   */s/ Michael E. Zeliger*
>                                   Michael E. Zeliger