UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMAZIN' RAISINS INTERNATIONAL, INC., an Ontario, Canada corporation,<br><br>Plaintiff,<br><br>v.<br><br>OCEAN SPRAY CRANBERRIES, INC., a Delaware corporation,<br><br>Defendant. | Civ. Action No. 04-12679-MLW |

## DECLARATION OF JACK MAZIN

I, Jack Mazin, declare:

1. I am the President, Chief Executive Officer, and Owner of Amazin' Raisins International, Inc. ("ARI"), an Ontario, Canada Corporation. I make this declaration on my own information, knowledge and belief.

2. I am also one of the named inventors of the United States Patent No. 5,188,861 ("the '861 patent").

3. I further am the President, Chief Executive Officer, and a major shareholder of Amazing Fruit Products Ltd., also an Ontario, Canada Corporation. I have held a substantial portion of the outstanding stock in Amazing Fruit Products, Ltd. since its creation in 2003 and continuing to do so to this day.

4. Around the beginning of 2001, I noticed Ocean Spray's Craisins® dried cranberry products were being sold in various flavors, including orange and cherry.

5. After reviewing the ingredient list of Ocean Spray's products, it became apparent to me that Ocean Spray was likely using ARI's patented process to make these products.

6. I subsequently retained Douglas Williams, then a senior partner at the law firm of



Merchant & Gould, to investigate and further assess whether Ocean Spray's process infringes my '861 patent.

7. I attended a settlement meeting on March 24, 2006 in Washington, D.C., in compliance with this Court's order requiring the parties to meet face-to-face and to, in good-faith, explore the possibility of settling this matter.

8. I traveled to Washington with Clifford D. Richler, the Vice President of ARI, and he attended the settlement conference as well.

9. At the meeting, Douglas Williams represented ARI as its lead outside counsel. There were no discussions with the Ocean Spray representatives that were not in my presence during the entire meeting.

10. My memory of the meeting in Washington with Ocean Spray is that each of the participants conducted themselves in a professional and respectful manner, with the exception of a heated exchange between Mr. Williams and Mr. Zeliger, prompted by Mr. Zeliger, that I explain in more detail below. Aside from this exchange, although there was a clear difference of opinion as to whether Ocean Spray indeed had been infringing my patent, all participants engaged in a constructive and meaningful discussion as to whether the parties could find a way to resolve this matter.

11. A necessary part of the discussion included affirmations by both sides that each recognized that both could benefit from settlement at that time, rather than expending further resources on further litigation and trial preparation.

12. My recollection is that Ocean Spray's counsel, Mr. Zeliger, suggested that ARI would not be able to sustain the amount of attorney fees that would be required to take this matter through to a jury verdict and (ultimately) to an appeal before the Federal Circuit. I understood Mr. Zeliger to be suggesting by his comment that, regardless of the merits of my claims against Ocean Spray, he intended to make sure that any recovery against Ocean Spray

would only come at significant and prolonged expense. I took Mr. Zeliger's comment as a threat.

13. Mr. Williams (responding to Mr. Zeliger's comment) explained, with full authority from me, that Merchant & Gould had already estimated the likely cost of proceeding in this litigation through to trial, and that ARJ was committed to trying this case to a jury, if necessary. Mr. William's comments, were in response to Mr. Zeliger's threat of increased and exorbitant fees that would be incurred, should ARI not resolve this matter on Ocean Spray's terms.

14. Mr. Williams did not say that Merchant & Gould had *full* authority to settle the case at any time during the meeting.

15. I have never granted Mr. Williams or the law firm of Merchant & Gould full settlement authority over this case, nor has Merchant & Gould ever sought such authority from me.

16. No settlement offer made by ARI during the meeting, or at any point in this matter, has ever been based on Ocean Spray's "cost of defense."

17. During the meeting, I also recall that Mr. Zeliger further threatened me with a subtle reference to the possibility that ARI would have to pay Ocean Spray's attorney fees. A vigorous exchange followed between counsel, but Ms. Sharenow intervened. Ms. Sharenow raised her hand to her counsel (Mr. Zeliger) indicating she wanted him to be quiet, and stated that she did not believe there to be any basis for such a request for relief. She also asked Mr. Zeliger to not make such comments. She commented that such comments would not serve any purpose, and should stop. Mr. Zeliger complied.

18. The March 24, 2006 discussions concluded, I believed, on a positive note. Ms. Sharenow seemed surprised to learn that ARI had been working hard in Canada on its ongoing business, and was in fact selling product, successfully, in the Canadian market.

19. Ms. Sharenow was also intrigued with exploring the possibility of both companies working together, and to work towards a potential business resolution of this matter. The meeting in fact ended with an agreement that Ocean Spray and ARI would schedule another meeting between Ocean Spray executives, Mr. Richler, and myself to explore a potential business solution.

20. A second meeting in fact occurred on April 20, 2006, less than 1 month later. I traveled to Lakeville, Massachusetts and met with the following executives from Ocean Spray: Keneth Romanzi (Chief Operations Officer of Ocean Spray); Sila D. Cansever (Ocean Spray's Director of Research & Development); Robert C. Beams (Ocean Spray Director of Agricultural Supply Strategy); Steven Harris (Senior Marketing Manager of Ocean Spray); Robert J. Stambaugh (Manager of Custom Manufacturing and Strategic Alliances); and Kristen Bosari (Marketing Manager).

21. After introductions, I passed out a sample of ARI's flavored raisin product and explained a private label program that ARI had been negotiating through Loblaw's, a major grocery retail company in Canada.

22. Upon conclusion of the general meeting with these executives, Ms. Sharenow arrived, and introduced me and Mr. Richler to Randy Papadellis, the Chief Executive Officer of Ocean Spray. Mr. Papadellis joked about the fact that we had almost met some years ago, said that he loved my product, and also said he would coordinate with Mr. Romanzi and get back to me in "a few weeks."

23. At no time during this second meeting did any executive of Ocean Spray mention that they thought my efforts to enforce my patent against Ocean Spray to be "a willful abuse of the judicial system," as stated in Ocean's Sprays current motion. Nor did any executive even suggest that my efforts have been in bad faith, or to be akin to extortion of Ocean Spray. To the

contrary, each executive seemed genuinely interested in working with me and my company, if possible.

24. In January of 2003, a group of investors and I agreed to create a new corporate entity known as Amazing Fruit Products, Ltd. In January of 2005, I transferred ownership of my '861 United States Patent with the intent of consolidating my intellectual property into a single corporate entity. In April of 2005, I transferred ownership of the '861 patent back into ARI, so that there would be no need to substitute the named plaintiff in this action.

25. The transfer was not influenced, motivated, or even made with the knowledge of a trial that apparently commenced in February of 2005 in California involving the Internet Culinary Corporation. My involvement with that company ended in the beginning of 2000, after the principals of that company failed to meet the terms of an asset purchase agreement between ARI and Pacific Standard Financial Group, Inc., a parent corporation of the Internet Culinary Corporation.

26. At the time of the conveyance of the '861 patent to Amazing Fruit Products, Ltd., I had no idea that a trial had commenced or was about to commence in the matter of Salter v. Phelen, in the Central District of California.

I declare under penalty of perjury under the laws of the United States of American that the foregoing is true and correct.

Executed on this 28th day of September 2007.

Jack Mazin