# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                              )
AMAZIN' RAISINS INTERNATIONAL, INC.          )
an Ontario, Canada corporation,                            )
                                                              )
                              Plaintiff,                      )
                                                              )
v.                                                            )  Civ. Action No. 04-12679-MLW
                                                              )
OCEAN SPRAY CRANBERRIES, INC.,               )
a Delaware corporation,                                   )
                                                              )
                              Defendant.                    )
_____)


## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
## DEFENDANT'S MOTION TO AMEND JUDGMENT AND AWARD FEES

## <u>TABLE OF CONTENTS</u>

INTRODUCTION..................................................................................................................1

FACTUAL BACKGROUND ...............................................................................................2

    I.    ARI ATTEMPTED TO RESOLVE THE DISPUTE BEFORE FILING
        THE COMPLAINT, BUT OCEAN SPRAY REFUSED TO PROVIDE
        FULL DISCLOSURE OF ITS PROCESSES  ....................................................2

    II.    DISCOVERY CONFIRMED ARI'S INFRINGEMENT POSITION ..............4

        A.    Discovery Showed Ocean Spray Uses an Acidulant to Eliminate the
                Residual Cranberry Taste of the Decharacterized Cranberries. ..........4

        B.    Discovery Revealed that Even Ocean Spray's Outside Counsel Did
                Not Believe that Dried Fruit Meant "Fruit With a Moisture Content
                Between About 10% to 18%." ...............................................................4

    III.    ARI HAS COOPERATED WITH OCEAN SPRAY TO MINIMIZE
         LITIGATION COSTS AND CONSERVE JUDICIAL RESOURCES ............5

    IV.    ARI HAS BEEN COMPLETELY PROFESSIONAL THROUGHOUT
         THIS LAWSUIT ...............................................................................................7

        A.    ARI's Decision Not to Test Samples Was Reasonable and Does Not
                Demonstrate ARI Acted in Bad Faith.....................................................7

        B.    Contrary to Ocean Spray's Version of Events, ARI and Its
                Attorneys Acted Professionally During Settlement Negotiations. .........8

        C.    Ocean Spray's Own Conduct Belies Its Current Rhetoric. ................10

    V.    OCEAN SPRAY'S OWNERSHIP ARGUMENT IS A RED HERRING ......12

    VI.    OCEAN SPRAY'S INVALIDITY CONTENTION IS WITHOUT
         MERIT .............................................................................................................13

ARGUMENT.....................................................................................................................15

    I.    THIS IS NOT AN EXCEPTIONAL CASE AND THE COURT SHOULD
        DENY OCEAN SPRAY'S MOTION FOR ATTORNEY'S FEES ................15

        A.    Ocean Spray Failed to Show With Clear and Convincing Evidence
                that ARI Should Have Known Its Claims Were Baseless. ...................17

        B.    ARI And Its Counsel Have Not Engaged in Litigation
                Misconduct.............................................................................................18

II.   OCEAN SPRAY HAS OFFERED NO ALTERNATIVE BASIS FOR
      THE COURT TO ASSESS ATTORNEY'S FEES AGAINST ARI
      UNDER 28 U.S.C. § 1927 ...............................................................................19

III.  THERE IS NO BASIS FOR THE COURT TO INVOKE ITS
      INHERENT POWERS TO SANCTION ...........................................................20

CONCLUSION .............................................................................................................21

## **INTRODUCTION**

The self-serving *ad hominem* attacks levied by Ocean Spray on Amazin' Raisins International ("ARI") and its counsel, the kind that only hindsight can afford a prevailing party, do not warrant the severe sanction that Ocean Spray seeks here.  True, Ocean Spray prevailed on its motion for summary judgment.  ARI, with due respect, intends to appeal.  However, success before this Court alone does not mean that ARI's claims have been pursued in bad faith, nor does it provide a legal or factual basis to subvert the longstanding American Rule that all parties shall bear their own costs when seeking justice before this Court.

There is no evidence, much less clear and convincing evidence, that ARI's good faith effort to enforce its established patent rights against Ocean Spray amounts to litigation misconduct, or a bad faith, frivolous and vexatious abuse of this process.  Throughout this case ARI has maintained positions supported by fact and law.  Moreover, at every turn in this action, ARI took reasonable steps to minimize fees and costs in this matter.   Indeed, ARI agreed to an expedited motion for summary judgment to minimize costs, and also stipulated to the postponement of discovery related to damages and all expert discovery pending the Court's disposition of that motion.  The parties agreed to a joint tutorial memorandum, and engaged in multiple good faith efforts to settle their differences.  This is a far cry from showing that ARI has engaged in litigation misconduct or pursued entirely unfounded, frivolous claims against Ocean Spray such that this is an exceptional case.

An award of attorneys' fees should occur only in those rare and extraordinary cases where clear and convincing evidence of bad faith has been offered.  Ocean Spray fails to meet that heavy burden here.  In reality, ARI and its counsel, from day one of this case through the filing of this brief, have vigorously and professionally enforced ARI's valid patent against Ocean

Spray in good faith.  Ocean Spray knows this to be true, given its conduct to date throughout this litigation.  The American Rule exists to ensure all litigants remain free to do so, within the bounds of the law.  Ocean Spray's motion should be denied.

## **FACTUAL BACKGROUND**

**I.  ARI ATTEMPTED TO RESOLVE THE DISPUTE BEFORE FILING THE COMPLAINT, BUT OCEAN SPRAY REFUSED TO RPOVIDE FULL DISCLOSURE OF ITS PROCESSES**

ARI owns the patent-in-suit which is directed to a process for preparing a dried fruit product that has a flavor other than its natural flavor.  (Declaration of Jack Mazin ("Mazin Decl.") at ¶ 24.)  Around the beginning of 2001, ARI noticed Ocean Spray's Craisins® dried cranberry products were being sold in various flavors, including orange and cherry.  (Id. at ¶ 4.)  After reviewing the ingredient list of Ocean Spray's products, it became apparent to ARI that Ocean Spray was likely using ARI's patented process to make these products.  (Id. at ¶ 5.)  Believing that Ocean Spray's Craisins® product may have been produced by an infringing process, ARI notified Ocean Spray about the patent-in-suit.  (Def. Ex. 1, 2.)  Ocean Spray responded by referring ARI to U.S. Patent Number 5,320,861 ("the Ocean Spray patent"), a patent that purportedly disclosed its process for making its flavored Craisins® products.  (Def. Ex. 3, 4.)  Ocean Spray's counsel at the time also claimed that "[m]ost of the infusion syrups that Ocean Spray uses lack any acid whatsoever," and asserted that those syrups with acid did not act to remove cranberry flavor.  (Def. Ex. 5.)

A review of this patent left serious doubt about Ocean Spray's contention that its process did not infringe ARI's patent.  First, as discussed in ARI's opposition to Ocean Spray's motion for summary judgment, Ocean Spray's patent shows on its face that its process removes nearly

all of the natural juice from the cranberries.[1]  Second, the patent stated that after the natural

juices had been extracted, the decharacterized cranberries retained "a predetermined amount of

inherent soluble fruit component . . . so that it maintains partially the natural fruit flavor."  (Def.

Ex. 4 at col. 2, ll. 13-18.)  In addition, Ocean Spray's patent did not disclose numerous pieces of

information about its process, including the specific ingredients of its infusion syrups, or the

varying parameters for the different flavored products.

Thus, ARI's review of Ocean Spray's patent alone left ARI with insufficient information

to determine whether Ocean Spray's process somehow avoided infringement.  Only Ocean

Spray, after all, knew what actually occurred in its processing plants.  As such, ARI requested

samples to continue its assessment of Ocean Spray's infringement and to possibly "provide the

basis for an early resolution" of the matter.  (Def. Ex. 6.)  After Ocean Spray failed to respond,

ARI renewed its request.  (Def. Ex. 7 at 2.)   More than three months after ARI requested the

samples, Ocean Spray responded, refusing to provide further information or samples to ARI.

(Sorenson Decl. Ex. A (12/17/03 letter from Whelan).)  Still hoping to resolve the dispute short

of legal action, ARI again asked for samples, and once again, Ocean Spray refused.  (Def. Ex. 7

at 3; Sorenson Decl. Ex. B (3/5/04 letter from Whelan).)

Because Ocean Spray refused to provide ARI information sufficient to verify Ocean

Spray's non-infringement claims, and because ARI had good reason to believe Ocean Spray

indeed infringed, ARI filed this suit.

---

[1]  See Pl.'s Mem. Opp. Mot. S.J. at 5-6 ("In one example of Ocean Spray's process, 7.5 pounds of natural liquid and soluble solids were removed from the raw cranberry pieces.  According to Table III of the Mantius patent, after seeds are removed, the cranberry slices weigh 99.7 pounds.  Once the cranberry pieces undergo extraction and decharacterization , i.e. the juice has been removed, the cranberries only weigh only 92 pounds.  In other words, the juice extraction process dried the fruit pieces by over 7.5 pounds.").

## II.    DISCOVERY CONFIRMED ARI'S INFRINGEMENT POSITION

### A.    Discovery Showed Ocean Spray Uses an Acidulant to Eliminate the Residual Cranberry Taste of the Decharacterized Cranberries.

Discovery did not reveal facts sufficient to defeat ARI's infringement position.  To the contrary, despite Ocean Spray's contention before discovery that most of the flavoring syrups at issue did not contain acid, documents produced by Ocean Spray confirmed (and Ocean Spray no longer disputes) that most of the infusion syrups used on the accused products (i.e. those that do not taste like cranberry anymore) in fact include acid.  (See Sorenson Decl. Ex. C (Mantius Depo. at 6); Pl.'s Mem. Opp. Mot. S.J. at 19.)  In addition, ARI confirmed during discovery that Ocean Spray's decharacterized fruit pieces from its production line indeed had a residual cranberry taste (consistent with Ocean Spray's patent), which supported ARI's infringement position that Ocean Spray uses citric acid to remove that residual cranberry flavor.  (See Pl.'s Mem. Opp. Mot. S.J. at 7.)

### B.    Discovery Revealed that Even Ocean Spray's Outside Counsel Did Not Believe that Dried Fruit Meant "Fruit With a Moisture Content Between About 10% to 18%."

Similarly, ARI learned during discovery that Ocean Spray's outside patent counsel (the same outside counsel who had before claimed that "most" of the accused flavoring syrups lacked "any acid whatsoever") had independently construed the term "dried fruit" to mean "fruit having a reduced liquid content relative to its natural state."  (Id. at 15.)  In other words, Ocean Spray's patent counsel construed "dried fruit" in a remarkably similar manner to ARI's proposed construction.  Ocean Spray's litigation position, that the term "dried fruit" should be construed to include a rigid numerical limitation entirely absent from the claims, a numerical limitation

relevant only to one preferred embodiment[2] of the inventive process, surfaced for the first time in this litigation, when it answered ARI's interrogatories on November 11, 2005. (Sorenson Decl. Ex. D, Suppl. Ans. Int. No. 4.)  In its answer, rather than asserting "dried fruit" to mean "fruit having a reduced liquid content relative to its natural state," Ocean Spray set forth a new definition.  (Id.)  For purposes of this litigation, Ocean Spray asserted "dried fruit" to mean "a fruit or piece of fruit that contains between about 10% to 18% moisture." (Id.)

Moreover, an independent expert[3] in the food industry confirmed ARI's understanding of the term dried fruit and also indicated that the term "dried fruit" should not be limited to a strict numerical moisture range.  (Pl.'s Mem. Opp. Mot. S.J. at 16.)  Amir Lalji, the inventor of the patent-in-suit, also agreed with this claim construction.  (Id.)  Even Ocean Spray's own Dr. Mantius did not agree with Ocean Spray's claim construction that required the moisture content to be within a certain numerical range.  (Id. at 14.)

## III.   ARI HAS COOPERATED WITH OCEAN SPRAY TO MINIMIZE LITIGATION COSTS AND CONSERVE JUDICIAL RESOURCES

Not only did ARI's infringement claims have a sound factual and legal basis, ARI conducted its infringement suit reasonably and professionally.  For instance, Ocean Spray's first

---

[2]  ARI has always maintained that a numerical limitation on moisture level of the fruit at issue is not appropriate.  In particular, as set forth in ARI's Supplemental Brief In Opposition To Defendant's Motion for Summary Judgment Of NonInfringement, the Mazin patent discloses processing variables as it describes the differing samples in the patent. (Pl.'s Supp. Mem. Opp. S.J., Dkt. No. 88, at 7, n. 3.)  Indeed, example 9 involves the use of raisins, before the acidulation step, that are "washed with hot water and dried." (Def. Ex. 1 at col. 8: 11-13.)  In example 9, there is no attempt to define the moisture content of the washed raisins before the acidulation step, although such a step certainly would increase the moisture content of the raisin.  (Id.)  ARI contended that this example alone is evidence enough to support the conclusion that claim 1 is also not limited in scope to the moisture of a raisin, and that the invention applies to a much broader moisture range than was advocated by Ocean Spray.  See, e.g., JVW Enters., Inc. v. Interact Accessories, Inc., 424 F.3d 1324, 1335 (Fed. Cir. 2005) (refusing to import limitations from examples disclosed in the specification into the claim language).

[3]  Recognizing this is likely an issue to resolve on appeal, ARI respectfully disagrees that there is any basis in the record to conclude that the expert declaration of Professor Cadwallader and ARI's construction of the term "dried fruit" was "contrived by counsel." Amazin' Raisins Int'l v. Ocean Spray Cranberries, Inc., No. 04-12679, Slip. Op. at 28 (D. Mass. Aug. 20, 2007).  To the contrary, Professor Cadwallader testified unequivocally in his deposition that his opinions are "100 percent" his conclusions.  (Sorenson Decl. Ex. J, Cadwallader Dep., p. 14:25-15:11.)  That two persons of skill in the art agree on the proper construction of a patent claim term does not support an inference that the construction was "contrived" in any manner.

5

document production was very limited and Ocean Spray failed to produce crucial documents

regarding its accused process.  (Sorenson Decl. Ex. E.)  ARI reasonably believed that the

withheld information was relevant and would bring to light more facts that supported its

infringement position.  After its requests were repeatedly denied, ARI was forced to bring a

motion to compel.  (Id. at Ex. F.)  Despite Ocean Spray's failure to cooperate and produce the

documents, ARI assented to a motion for an extension of time for Ocean Spray to file its

opposition.  (Id. at Ex. G (11/10/05 motion for extension of time).)  Only after ARI prepared and

filed its motion seeking this Court's assistance did Ocean Spray finally produce the relevant

documents.  (Id. at Ex. H.)   Once it received the requested documents, ARI withdrew its motion.

(Id. at Ex. I (12/27/05 withdraw motion).)

ARI also agreed to simplify discovery and expedite the resolution of this case.

Specifically, ARI agreed with Ocean Spray that a very early summary judgment motion made

sense in this case, as the dispute here centers largely on the construction of a few critical claim

terms.  Consequently, in a November 17, 2005, joint motion to amend the scheduling order, ARI

indicated its agreement that summary judgment was the most efficient way to resolve the

dispute.  (Id. at Ex. K (11/17/05 joint motion to amend scheduling order) "[T]he parties believe

that a motion for summary judgment on the issue of infringement wherein the disputed

limitations would be construed by the Court presents the most efficient way to resolve this

matter.")  ARI further agreed to stay discovery on damages completely and to postpone the

submission of expert reports on both liability and damages pending resolution of summary

judgment.  (Id.)  The record reflects nothing but cooperation from ARI and its counsel in an

effort to reach a speedy resolution of the dispute.[4]

---

[4] Ocean Spray seemingly contends it was somehow litigation misconduct for ARI to file its case in Minnesota.
Ocean Spray ignores the plaintiffs' choice in forum, and further ignores the fact that multiple depositions, including

## IV.    ARI HAS BEEN COMPLETELY PROFESSIONAL THROUGHOUT THIS LAWSUIT

Even though ARI was completely cooperative throughout the lawsuit, Ocean Spray attempts to make ARI look like a bad faith litigant.  The record reflects quite the opposite.

### A.    ARI's Decision Not to Test Samples Was Reasonable and Does Not Demonstrate ARI Acted in Bad Faith.

In one attempt to paint ARI as a frivolous litigant, Ocean Spray berates ARI for failing to perform tests on the samples of decharacterized fruit products Ocean Spray finally provided in December 2005.  However, Ocean Spray did not provide these samples until the same day a deposition of one of its employees revealed that the decharacterized fruit pieces still taste like cranberries.  (See Pl.'s Mem. Opp. Mot. S.J. at 7 ("They've got a -- a cranberry -- a slight cranberry bite to them.").)  This same employee has had training in taste perception, and his testimony is ample evidence of the fact that the decharacterized fruit indeed retains cranberry flavor after extraction.  (Sorenson Decl. Ex. L (Scott Depo. at 94: 4-11).)  This testimony supported ARI's infringement theory—that the decharacterized fruit pieces had remaining cranberry flavor, to be removed by the acidulant.  Knowing that these pieces retained their cranberry flavor, ARI had sufficient evidence to support its infringement position at the summary judgment stage without having to test any sample.  Thus, ARI reasonably determined that it did not need to test the decharacterized fruit pieces for flavor.[5]

---

one of an Ocean Spray employee, have in fact been conducted in Minneapolis, Minnesota, where one of Ocean Spray's counsel resides.  Further, an inspection of Ocean Spray's plant was conducted in Tomah, Wisconsin.  In the end, Minnesota would have been just as convenient as Massachusetts and the expenses Ocean Spray incurred in transferring the case to Massachusetts accomplished nothing.

[5] ARI did not seek the samples for the purpose of analyzing the moisture content of the decharacterized fruit pieces.  The absolute moisture content of the decharacterized fruit pieces was relevant only to Ocean Spray's claim construction, not ARI's, which was focused on the removal of natural moisture content.  There has never been any dispute that Ocean Spray's process removes nearly all the natural moisture content of its cranberries, squarely within the literal scope of ARI's proposed construction of the term "dried fruit."

**B.    Contrary to Ocean Spray's Version of Events, ARI and Its Attorneys Acted Professionally During Settlement Negotiations.**

In a final and desperate attempt to spin a bad faith theme into its motion, Ocean Spray insults ARI and its counsel by portraying both as nefarious extortionists.  Ocean Spray's spin is predicated on a mischaracterization of what occurred during the settlement conference, and is simply not true.  At no time has any settlement offer from ARI been calculated using any cost of defense estimate.  (Mazin Decl. at ¶ 16.)  Further, ARI's claims were not baseless.  More to the point, however, ARI has done everything in its power to minimize costs and to stream-line and expedite claim construction in this matter.   ARI agreed to postpone damages and expert discovery entirely, which would have obviously raised the costs for Ocean Spray to defend this case significantly.  If ARI was playing the part of an extortionist, it certainly has done nothing to enhance the level of exposure Ocean Spray faced in this matter by way of attorney's fees, or expense.

The real situation differs greatly from Ocean Spray's characterization of events.  During the settlement conference at issue, it was Ocean Spray, not ARI, who first suggested that ARI would not be able to incur the anticipated cost of continuing with this lawsuit through to trial.  (Mazin Decl. at ¶ 12; Declaration of Clifford D. Richler ("Richler Decl.") at ¶ 6.)  In responding to Ocean Spray's suggestion that ARI faced significant expense should it elect to proceed with the litigation, ARI's attorney, Doug Williams, responded that ARI and its counsel were committed to this case, and had budgeted the case appropriately.  (Mazin Decl. at ¶ 13; Richler Decl. at ¶ 7.)   Mr. Williams did not state that he had full authority from ARI to settle the case.  (Mazin Decl. at ¶ 14; Richler Decl. at ¶ 8; Mazin Dep. at 115-116)(Sorenson Decl. Ex. M.)  Neither Merchant & Gould, nor Mr. Williams, has ever possessed full authority to settle this case.  (Mazin Decl. at ¶ 15.)  Regardless, meaningful negotiations require litigants to consider all

possible outcomes and to consider the likely cost.  Above all else, ARI (it is believed) is entitled

to its day in Court.  Mr. Williams' comments merely made clear that ARI was prepared to incur

the necessary cost to try this case.  His comments were in no way inappropriate.[6]

Ocean Spray's own actions, moreover, belie its present assertion that ARI's actions have

been nothing but frivolous extortion.  Following the settlement discussions at which ARI

allegedly attempted its extortion, the parties agreed to try to explore a business solution to the

dispute.  (Mazin Decl. at ¶¶ 18-19; Richler Decl. at ¶¶ 12-13.)  Thereafter, in April 2006, Jack

Mazin and ARI's Vice President, Clifford Richler met with no less than seven Ocean Spray

senior executives, including the CEO, the COO, two marketing managers, the Director of

Research and Development, the Director of Agricultural Supply Strategy, and the Manager of

Custom Manufacturing and Strategic Alliances, to discuss the ARI product and possible

opportunities.  (Mazin Decl. at ¶ 20; Richler Decl. at ¶ 13.)  The meeting lasted for several hours,

and at least ARI believed them to be positive, constructive meetings to find a business solution to

this lawsuit.  (Mazin Decl. at ¶¶ 20-23; Richler Decl. at ¶¶ 14-16.)

Indeed, far from the *ad hominem* and disparaging attacks levied on Mr. Mazin, his patent,

and his counsel in the present motion, Ocean Spray's CEO promised he would contact Mr.

Mazin to follow up a few weeks after the meeting.  (Mazin Decl. at ¶ 22.)  It is unbelievable that

the CEO of Ocean Spray, six of his fellow executives, and Ms. Sharenow herself (one declarant

supporting the present motion) would take the time, separate and apart from any court-ordered

---

[6] Ocean Spray also contends that ARI's settlement offers after the summary judgment hearing were outrageous. (Def.'s Mem. at 7.)  To the contrary, ARI's offers (which were offered merely as a starting point for negotiations— not a final demand) were fair and reasonable.  ARI presented three options to Ocean Spray, including a non-exclusive license to Claim 1 on cranberries in exchange for an agreement that Ocean Spray would continue processing flavored cranberries exclusively with its counter-current process, mark the accused products with the '861 patent, and pay $1 million for past infringement and 3% on gross revenue from future sales.  (Def. Ex. 23.) These offers were reasonable in light of the net revenue for the accused products (excluding blueberry products) for January 2002 through March 22, 2006. (Sorenson Decl. Ex. N (Email from Zeliger, 3/22/06).)  Indeed, $1 million in royalty payments for past infringement is a demand seeking (as a starting point) an amount less than the royalty that Ocean Spray admitted to receiving from a licensee of its process.  (Sorenson Decl. Ex. N.)

settlement effort, to meet personally with a frivolous litigant who had filed a vexatious lawsuit against Ocean Spray aimed at nothing but extortion. What party would sincerely consider exploring a business relationship with a believed extortionist?

**C.    Ocean Spray's Own Conduct Belies Its Current Rhetoric.**

The truth is that both Ocean Spray and ARI have taken this lawsuit seriously, and neither believed it to be frivolous. Not only do Ocean Spray's principal-to-principal business discussions indicate that it did not view ARI as a bad faith litigant, ample evidence suggests that Ocean Spray has believed, all along, that ARI's infringement claim had merit and warranted serious attention.

First, Ocean Spray held back information about its process before the action commenced, suggesting that it had something to hide. Indeed, Ocean Spray was hiding that the accused infusion syrups used citric acid to remove flavor. (<u>Compare</u> Def. Ex. 5 and Sorenson Decl. Ex. C at 6 (Mantius Depo.).) Further, after the parties agreed to abstain from damages and expert discovery until after the Court issued its summary judgment decision, Ocean Spray appears to have hired and spent significant time working with a food science expert. (Def. Ex. A, Part 3, at 14-15, 26-28.) Moreover, after briefing was closed on its summary judgment motion, Ocean Spray saw fit to take three depositions, two of which required travel to Canada. (Sorenson Decl. Exs. P, Q, R (depo notices).) This is an odd move for a party who had completed summary judgment briefing, predicated on an assertion that no genuine issues of material fact existed and that it was entitled to judgment as a matter of law. The truth is Ocean Spray believed ARI's case to have merit.

Further, Ocean Spray, after it had completed its summary judgment briefing, also undertook preparations to file a request for reexamination of the '861 patent with the United

States Patent and Trademark Office,[7] (Def. Ex. A, Part 4, at 10-11, 13-14, 16) and undertook further efforts to develop an invalidity defense. (Def. Ex. A, Part 3, at 14, 16, Part 4, at 8.) Ocean Spray also undertook "considerable expense" to build another defense predicated on its mistaken belief that ARI flat-out lied about its ownership of the patent-in-suit, going so far as seeking third party discovery on the issue. (See Def.'s Mem. at 7.)

All of these behind-the-scene efforts by Ocean Spray's counsel begs the question: if it was so clear that Ocean Spray did not infringe, and ARI's infringement contentions were so blatantly and objectively frivolous from the beginning, then why would Ocean Spray waste so much time and effort behind the scenes on all these additional, needless defenses? In truth, Ocean Spray never believed ARI's infringement case to be frivolous.

Finally, and perhaps most tellingly, Ocean Spray also authorized its counsel to analyze whether it had a basis to file a Rule 11 motion against ARI. (Def. Ex. A., Part 4, at 10.) Counsel's invoices reflect, for instance, time spent by M. E. Zeliger to "work on analysis re Rule 11 motion. . . . ." (Id.) As no Rule 11 process has been either served or filed by Ocean Spray to date, it is safe to infer that Ocean Spray and its counsel concluded long ago that it had no Rule 11 basis for such a motion. Having concluded it had no basis to invoke the Rule 11 process against ARI, it is remarkable that Ocean Spray now asserts to this Court that Ocean Spray knew all along that ARI's case was a frivolous, bad faith, abuse of the judicial process. The opposite is true. Ocean Spray and its counsel have, throughout this case, accepted and defended against the good faith and legitimate arguments set forth by ARI in this matter. If Ocean Spray truly believed ARI's case to be so objectively baseless, then it has some explaining to do as to why it incurred the expense it has defending such allegedly frivolous claims.

---

[7] To the best of ARI's knowledge, Ocean Spray never filed this reexamination request.

11

Now that the Court has ruled in its favor, Ocean Spray has taken liberty with the facts, insulted ARI and its counsel with baseless allegations, and apparently believes that ARI, not Ocean Spray, should incur the fees that Ocean Spray decided to incur in lieu of an early Rule 11 motion.  Ocean Spray's current rhetoric and past conduct does not support such an unjust sanction.

## V.    OCEAN SPRAY'S OWNERSHIP ARGUMENT IS A RED HERRING

Ocean Spray also attempts to confuse the issues before this Court by raising a false question as to the ownership of the '861 patent.  The '861 patent was never assigned to Capitol Silver Mines, Inc.; a fact that Ocean Spray itself admits.  Salter v. Phelan, No. 99-912, Slip. Op. at ¶ 5 (C.D. Cal. Feb. 28 2005) ("In fact, at the time of this representation, CSM had not acquired Amazin' Raisins (and in fact never acquired Amazin' Raisins).") (Def. Ex. 18).  Knowing that Capital Silver Mines, Inc. never held legal title to the patent-in-suit, Ocean Spray nonetheless spins the truth into an attack on Mr. Mazin's character, contending he is lying about his ownership of the patent-in-suit.  (Def.'s Mem. at 6-7.)

Once again, the facts belie this challenge.  Throughout this litigation, Mr. Mazin either fully owned or maintained a major ownership interest of both companies that owned the patent-in-suit.  (Mazin Decl. at ¶ 20.)  It is true that on January 31, 2005 the patent-in-suit was assigned to Amazing Fruit Products.  (Def. Ex. 21 at 22-24.)   However, on April 28, 2005 Amazing Fruit Products assigned both the patent in suit and "all claims, damages or other relief" for infringement back to ARI.  (Def. Ex. 21 at 25-27.)  The practical effect of this brief period of assignment is nonexistent.  ARI owned the patent when the complaint was filed.  Although ARI assigned the patent during the pendency of the litigation, ARI reacquired the patent before judgment, curing any jurisdictional defect.  Schreiber Foods, Inc. v. Beatrice Cheese, Inc., 402

12

F.3d 1198, 1202-1203 (Fed. Cir. 2005). ARI also has the right to recover damages for infringement during this period because Amazing Fruit Products specifically assigned "all claims, damages or other relief" that it had for infringement back to ARI. Therefore ARI can recover damages for infringement during the three month period that Amazing Fruit Products owned the patent. See Arachnid, Inc. v. Merit Industries, Inc., 939 F.2d 1574, 1579 (Fed. Cir. 1991).

Ocean Spray's purported ownership defense is nothing but a distraction. Regardless, the same question begs: why would Ocean Spray spend so much time and effort on such a defense if it truly believed ARI's basic infringement theory to be so completely void of merit as to warrant the sanctions it seeks in the present motion?

## VI.    OCEAN SPRAY'S INVALIDITY CONTENTION IS WITHOUT MERIT

In further support of its hindsight criticism of ARI, Ocean Spray raises a conclusory invalidity contention based upon U.S. Pat. No. 4,364,968 ("the '968 patent"). Ocean Spray completely ignores a fundamental patent law that a patent is presumed valid and that Ocean Spray bears the burden of proving the invalidity of the patent-in-suit with clear and convincing evidence. 35 U.S.C. § 282; State Contr. & Eng'g Corp. v. Condotte Am., Inc., 346 F.3d 1057, 1067 (Fed. Cir. 2003). Ocean Spray has never attempted to meet this burden, and its reliance on this defense in support of the present motion for attorney's fees is misplaced.[8]

Even so, Ocean Spray's invalidity contentions, had they ever been brought formally, fail. In order to demonstrate the '968 patent anticipates claim 1, Ocean Spray must demonstrate that the '968 patent discloses every element of claim 1. Amgen Inc. v. Hoechst Marion Roussel, Inc., 457 F.3d 1293, 1306-1307 (Fed. Cir. 2006). In addition, the reference must enable one of skill in

---

[8] Ocean Spray has presented its invalidity defense in only cursory fashion; its invalidity contentions have never been assessed by the Court. As Ocean Spray has not been a prevailing party with respect to its invalidity contentions, it should not be entitled to recover its fees for the development of these untested defenses.

the art to perform the claimed method.  Id.  Ocean Spray presents nothing but attorney argument to this Court on this defense, and utterly fails to overcome the presumption that ARI's patent is valid.

For instance, claim 1 of ARI's patent requires a step of treating the dried fruit with a flavoring agent having a flavor which does not substantially correspond to the natural flavor of the dried fruit, said flavoring agent being employed in an amount and for a period of time which is sufficient to impart to the dried fruit a flavor which is substantially the same as the flavoring agent during either (a) the step of treating the dried fruit with an acidulant, or (b) after the step of dehydrating the treated dried fruit product.

Setting aside the remaining claim elements of claim 1 for purposes of argument, Ocean Spray fails to explain how the reference it cites discloses every aspect of this step, which it must do in order to invalidate claim 1.  The cited reference is directed to a process for manufacturing raisins with improved texture, such that the products "remain desirably soft over extended periods of time."  (Def. Ex. 10 at col. 1, ll. 13-23.)  After addressing prior art methods for making raisins, the specification of the '968 patent states that "there remains, however, a present need for a process capable of treating fresh fruits so that the dried fruit products retain more of their natural flavor and in the dried condition, remain soft, flavorful, and of good color for longer periods of time."  (Id. at ll. 47-51.)  Thus, this reference is focused on a different goal than that of the claimed invention.  It is nonsensical that a reference focused on enhancing the natural flavor and texture of a fruit could be interpreted as teaching a method for changing the flavor of the fruit entirely.

Nonetheless, Ocean Spray cites two sentences from the patent as teaching this flavoring step.  (Def.'s Mem. at 4.)  These vague, isolated statements fail to teach the use of a flavoring

agent to change the flavor of the fruit to some substantially different flavor. Indeed, the patent is devoid of any teachings as to how one of ordinary skill in the art could remove the flavor of the natural fruit product and replace it with a completely different flavor as required by claim 1. That is simply not the focus of the patent. Indeed, just sentences later, the '968 patent explains how to develop a "more pronounced" raisin flavor – not a process to change the raisin so that it tastes like a cherry. (Def.'s Ex. 10 at col. 4, ll. 27-29.)

These vague references, lacking any supporting disclosure, would not have enabled one of ordinary skill in the art to perform the Mazin invention. On the other hand, the patent-in-suit goes through 14 different exemplary processes teaching how to perform the claimed process. This is simply not the kind of clear and convincing evidence Ocean Spray would need in order to overcome the presumption of validity ARI's patent must be afforded, and certainly does not support a conclusion that ARI has pursued this case in bad faith.

## **ARGUMENT**

### I.     **THIS IS NOT AN EXCEPTIONAL CASE AND THE COURT SHOULD DENY OCEAN SPRAY'S MOTION FOR ATTORNEY'S FEES**

Ocean Spray has failed to prove with clear and convincing evidence that this case is exceptional and that an award of attorneys' fees is warranted. Under 35 U.S.C. 285, a trial court can award attorneys' fees to the prevailing party only in exceptional circumstances. The recovery of attorneys' fees in patent suits is a rare exception to the American Rule, which requires each party to bear its own attorneys' fees that should be limited to circumstances in which it is necessary to prevent a gross injustice to the accused infringer. Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1329 (Fed. Cir. 2003); J.P. Stevens Co. v. Lex Tex Ltd., 822 F.2d 1047, 1052 (Fed. Cir. 1987) (indicating that the purpose of section 285 is to provide a court with discretion to award attorneys' fees where "it would be grossly unjust that the winner be left to

bear the burden of his own counsel which prevailing litigants normally bear"). The American

rule is deeply rooted in our history and its policy is fundamental: "since litigation is at best

uncertain one should not be penalized for merely defending or prosecuting a lawsuit. . . ."

Fleischmann Distilling Corp. v. Maier Brewing Co., 384 U.S. 714, 718 (1967); Rohm Haas Co.

v. Crystal Chem. Co., 736 F.2d 688, 690 (Fed. Cir. 1984).

An award of attorneys' fees under section 285 involves a two-part determination. First, a

district court must determine whether the prevailing party has proven an exceptional case by

clear and convincing evidence. Forest Labs., 339 F.3d at 1327. To establish exceptional case,

the prevailing party must show clear and convincing evidence of inequitable conduct before the

PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous

suit or willful infringement. Id. at 1330-31; Waner v. Ford Motor Co., 331 F.3d 851, 857 (Fed.

Cir. 2003). A frivolous claim is one which the patentee knew or on reasonable examination

should have known was baseless. Haynes Int'l v. Jessop Steel Co., 8 F.3d 1573, 1579-80 (Fed.

Cir. 1993) (reversing the district court's grant of fees because the patentee had a reasonable

chance of proving infringement). "The pertinent inquiry is whether [the patentee] knew or

should have known that it could not successfully assert the . . . patent against [the accused

infringer] but pursued its infringement claim anyway. Stephens v. Tech Int'l, Inc., 393 F.3d

1269, 1274 (Fed. Cir. 2004).

Second, if the district court finds the case exceptional, it must then determine whether an

award of attorneys' fees is appropriate. Stevenson v. Sears, Roebuck & Co., 713 F.2d 705, 712-

13 (Fed. Cir. 1983). A finding of exceptional circumstances does not mandate an award of fees;

rather, a number of factors determine whether attorney fees are appropriate, including the

closeness of the case, tactics of counsel, the conduct of the parties and other factors that may

contribute to a fairer allocation of the burdens of litigation as between winner and loser.  J.P.

Stevens, 822 F.2d at 1051.

> A.     **Ocean Spray Failed to Show With Clear and Convincing Evidence that ARI Should Have Known Its Claims Were Baseless.**

Ocean Spray has not shown that ARI's enforcement of its valid patent rights renders this

case exceptional.  Because there is a presumption that the assertion of infringement of a duly

granted patent is made in good faith, the defendant must present affirmative evidence of bad

faith.  Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381-82 (Fed. Cir.

2005).  The underlying improper conduct and the characterization of the case as exceptional

must be established by clear and convincing evidence.  Id.

Ocean Spray has not shown that ARI's infringement claim was brought in bad faith.

Infringement is often difficult to determine[9] and a patentee's ultimately incorrect view of how a

court will rule does not establish bad faith.  Id. at 1383.  Thus, if a patentee's infringement theory

rests on reasonable and plausible arguments regarding claim construction, the litigation was not

brought or maintained in bad faith.  Forest Labs., 339 F.3d at 1330-31 (reversing the district

court's grant of attorneys' fees because the patentees presented "plausible yet untenable

arguments regarding claim construction"); Fantasy Sports Props. v. Sportsline.com, Inc., 287

F.3d 1108, 1120 (Fed. Cir. 2002) (affirming the district court's denial of attorneys' fees where

the movant failed to demonstrate that the plaintiff's proposed claim construction, under which

the defendants would literally infringe, was unreasonable); see IP Innovation, L.L.C. v.

eCollege.com, 156 Fed. Appx. 317, 324 (Fed. Cir. 2005) (affirming the denial of attorneys fees

---

[9] Indeed, the Court spent 22 out of the 37 pages of its summary judgment opinion analyzing scope of the term "dried fruit."  The Court ultimately rejected the proposed constructions of both ARI and Ocean Spray.  Ocean Spray's contention that "it was absurd for ARI to claim that drenching fruit in water somehow created 'dried fruit'" oversimplifies the infringement determination.  (Def.'s Mem. at 2.)  Claim construction is a complicated process in which claims are to be construed in the context of the patent as a whole from the perspective of one of ordinary skill in the art.

because the plaintiff's infringement theory under its proposed claim construction was plausible). ARI reasonably asserted a plausible claim construction, and under that construction, scope of its claims covered Ocean Spray's process.

That ARI lost on summary judgment does not mean its claims were frivolous. "When the motion is granted, the court has effectively ruled that the claim or defense lacked merit, given the governing precedents. That does not mean, of course, that every losing summary judgment opponent can be blamed for a frivolous argument simply because it has been determined that the loser's argument lacked merit as a matter of law." Bicon, Inc. v. Straumann Co., 356 F. Supp. 2d 6, 8 (D. Mass. 2005). ARI neither knew, nor should have known, that its infringement case would fail. Instead, it reasonably construed the claims of the '861 patent and determined that the Ocean Spray process was within the scope of those claims. Therefore, Ocean Spray has not established with clear and convincing evidence that ARI acted in bad faith or that this is a frivolous case.

### B.    ARI And Its Counsel Have Not Engaged in Litigation Misconduct.

Ocean Spray is also not entitled to attorneys' fees because it has not shown with clear and convincing evidence that ARI and its counsel engaged in litigation misconduct. To the contrary, ARI and its counsel acted reasonably and professionally at each stage of this litigation. ARI tried to resolve the dispute before filing suit. ARI cooperated with Ocean Spray to reduce costs and move the case through the court system efficiently. ARI acted professionally at settlement negotiations and sought to achieve an amicable business solution to the dispute. ARI also proposed settlement options that were reasonable in light of the revenue from sales of the accused product. ARI's and its attorneys' attempts to enforce ARI's valid patent rights falls well short of litigation misconduct. See Highway Equip. Co. v. FECO, Ltd., 469 F.3d 1027, 1037

(Fed. Cir. 2006); <u>Aptix Corp. v. Quickturn Design Sys., Inc.</u>, 269 F.3d 1369, 1373 (Fed. Cir. 2001) (attorneys' fees are proper where the plaintiff forged lab notebooks, conduct which constituted an attempt "to defraud the court and to strengthen its patent through a premeditated and sustained campaign of lies and forgery"); <u>Polaroid Corp. v. Eastman Kodak Co.</u>, No. 76-1634-MA, 1990 U.S. Dist. LEXIS 17968, *241-42 (D. Mass. Oct. 12, 1990) (denying attorneys' fees because although "the trial was vigorously contested at every turn, counsel were prompt, attentive, and civil.  They played by the rules.  Issues were not presented in bad faith; tactics were not vexatious or dilatory; sham defenses were not employed.").  Ocean Spray's contention to the contrary is both insulting and belied by the facts.  For this reason as well, Ocean Spray has not shown that this case is exceptional as required by section 285.

## II.    OCEAN SPRAY HAS OFFERED NO ALTERNATIVE BASIS FOR THE COURT TO ASSESS ATTORNEY'S FEES AGAINST ARI UNDER 28 U.S.C. § 1927

As Ocean Spray has failed to demonstrate that ARI maintained this case in bad faith such that the court should award fees under 35 U.S.C. § 285, the Court should also refuse to exercise its powers under 28 U.S.C. § 1927 to award fees in this case.

A court can require an attorney who "multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  In the First Circuit, sanctions under section 1927 may be awarded only when an attorney "displays a serious and studied disregard for the orderly process of justice."  <u>Rossello-Gonzalez v. Acevedo-Vila</u>, 483 F.3d 1, 7 (1st Cir. 2007) (citations omitted).  Only when an "attorney's conduct in multiplying the proceedings is unreasonable and harassing or annoying," judged from an objective standard, may sanctions under section 1927 be appropriate.  <u>Id.</u>; <u>McLane, Graf, Raulerson & Middleton, P.A. v. Rechberger</u>, 280 F.3d 26, 44 (1st Cir. 2002) (citations omitted).

ARI's attorneys did not unreasonably or vexatiously multiply the proceedings in this case or engage in unreasonable and harassing or annoying conduct. Evaluating the conduct from an objective standard, ARI's attorneys actually reduced the proceedings in the case. ARI attorneys worked to avoid the necessity of suit, it settled and withdrew discovery disputes, expedited the resolution of the case through summary judgment, and postponed additional discovery until the Court had resolved Ocean Spray's motion. This conduct is not "unreasonable" or "harassing" or "annoying" or "a serious and studied disregard for the orderly process of justice". See Rossello-Gonzalez v. Acevedo-Vila, 483 F.3d 1, 7 (1st Cir. 2007) (holding that the plaintiffs did not vexatiously multiply the proceedings by filing a complaint, amending it and arguing vigorously for the relief sought while noting that the litigants requests for "sanctions under § 1927 are based on the alleged frivolity of Plaintiffs' complaint, arguments which go mainly to Defendants' request for attorneys' fees under section 1988, not under section 1927."). Therefore, the conduct of ARI's attorneys is not sanctionable under section 1927.

## III.    THERE IS NO BASIS FOR THE COURT TO INVOKE ITS INHERENT POWERS TO SANCTION

Nor is there a basis for the exercise of this Court's inherent powers to sanction ARI and its counsel. A court has the inherent power to impose sanctions where a fraud has been practiced upon the court or the very temple of justice has been defiled. Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991). A court must "exercise caution" when invoking its inherent powers to impose sanctions. Id. at 50. When statutes or rules provide an adequate sanction for bad faith, a trial court should ordinarily rely on those express authorities for sanctions. Amsted Indus. v. Buckeye Steel Castings Co., 23 F.3d 374, 378 (Fed. Cir. 1994). A court's exercise of this inherent power is appropriate to sanction a party's egregious conduct, such as when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Chambers, 501 U.S at 45-

46; <u>Amsted Indus.</u>, 23 F.3d at 378.  Here, there is no evidence that ARI or its attorneys acted in bad faith, vexatiously, wantonly, or for oppressive reasons.  Instead, ARI and its counsel appropriately enforced ARI's valid patent, cooperated to efficiently resolve the dispute, reduced litigation costs, and attempted at every step to settle the dispute.

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

Because Ocean Spray has failed to show clear and convincing evidence that ARI acted in bad faith, brought a frivolous case, or that such conduct rendered this case exceptional, unreasonable, or vexatious, ARI respectfully requests that this Court deny Ocean Spray's motion.


Dated: September 28, 2007                    By:  /s/ Christopher J. Sorenson

**ATTORNEYS FOR PLAINTIFF**
Nicholas G. Papastavros (BBO # 635742)
Gina M. McCreadie (BBO # 661107)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
Telephone: 617-345-1000

Christopher J. Sorenson (MN # 210118)
Todd S. Werner (MN # 033019X)
MERCHANT & GOULD P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: 612-332-5300
Facsimile: 612-332-9081